AMERICAN SURETY CO. OF NEW YORK v. LAWRENCEVILLE CEMENT CO. et al.

(Circuit Court, D. Maine.   July 17, 1899.)

1. BONDS OF UNITED STATES CONTRACTORS — ACTIONS ON — DISTRIBUTION OF PROCEEDS BETWEEN CREDITORS.

Where there are claims against a contractor for the construction of a public work of the United States and the sureties on his bond, under the act of August 13, 1894 (28 Stat. 278), in favor of the United States, and also of individuals supplying labor or materials, aggregating a sum in excess of the penalty of the bond, the equitable rule of pro rata distribution will be applied, and no priority will be given to the United States, or to any individual creditor by reason of his having first commenced suit.

2. SAME—RIGHT OF RECOVERY AGAINST SURETY.

A surety on such a bond cannot require the obligees to exhaust the property of the principal before enforcing the obligation of the bond, or to await the collection of indemnity by the surety.

3. EQUITY — ANCILLARY SUIT — DISTRIBUTION OF FUND BETWEEN PARTIES TO DIFFERENT ACTIONS.

A large number of actions at law were brought in a federal court against a contractor for a public work of the United States and the surety on his bond by persons who had furnished labor or materials in the prosecution of the work. There were similar actions pending in other jurisdictions, and still other claims outstanding on which actions had not been brought, including a possible one by the United States for the extra cost of completing the work after its abandonment by the contractor: the aggregate of all the claims exceeding the penalty of the bond. Held, that such facts entitled the surety to maintain a suit in equity in such federal court, ancillary to the actions pending therein, through which the fund in its hands can be equitably distributed.

4. SAME—JURISDICTION—PARTIES.

It is no objection to the maintenance of such suit that, owing to the citizenship of necessary parties, it could not be maintained in that court as an original suit, or that, as an ancillary suit, only those claimants who had suits pending therein could be made parties, since a partial distribution could be made between such parties, with due regard to the rights of all claimants, and the remainder of the fund be held, and the suit retained for final distribution, after the rights of all parties in interest have been determined.

In Equity.

Henry C. Wilcox and Thomas L. Talbot, for complainant.

Charles F. Libby and Benjamin Thompson, for defendants.

PUTNAM, Circuit Judge.   The statute of August 13, 1894 (28 Stat. 278, c. 280), provides that any "person or persons" supplying labor or materials to one entering into a formal contract with the United

States for the prosecution of any public work, which labor or materials were used therein, and payment for which has not been made, "shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties, and to prosecute the same to final judgment and execution." It is further provided "that such action and its prosecutions [sic] shall involve the United States in no expense." The statute also contains a second section, authorizing the court "in which such action is brought" to require security for costs in case judgment is for the defendant.

While the statute uses the plural with reference to the persons whose claims may be protected under its provisions, it uses the singular wherever the suit, action, execution, or judgment are referred to. The statute, however, leaves it for the court to ascertain, as best it may, whether, in the event a bond is given the United States by the contractor for the due performance of his contract, the method of proceeding thereon shall be that always known to the common law; that is to say, by a single suit for the penalty, with such further incidental proceedings as may be necessary to determine and collect the amount due each of the various persons whose interests the bond protects, or whether every person within the purview of the statute may bring a separate suit, as has been done in the history of the case which we have now to consider. The statute is also silent on the question whether or not, with reference to claims of less than $2,000, the suits, which are nominally in the name of the United States, but in which the United States have no interest, and which are really for the benefit of individuals, can be maintained in the federal courts, under the rule, firmly established by the supreme court, that on bonds running to nominal plaintiffs the jurisdiction depends on the character of the parties having substantial interests in the litigation. These questions, however, if they are questions, are not raised in the case before us, and, of course, are more properly for consideration in the suits at law with reference to which the case now before us has arisen.

A more serious defect, however, exists in the statute, and that is its failure to declare whether or not the United States retain against the contractor, and the sureties on whatever bond may be furnished, the priority which is customary under the law, especially when insolvency appears, and, further, whether, in the event the bond is not sufficient to cover all the claims as to which the contractor is in default, the equitable rule of pro rata distribution exists between individual creditors, or whether priority can be acquired by first bringing suit, or first obtaining a judgment, against the surety. As to both of these questions, we are so clear that the equitable rule of pro rata distribution exists, not only between the United States and individual claimants, but also as between individual claimants themselves, that we do not find it necessary to elaborate the proposition. The United States, by the force of the statute which we have cited, voluntarily make themselves trustee, alike for their own interest and for the interests of the individuals intended to be protected; and, having thus voluntarily created and accepted a trust, they are

barred by equitable principles from asserting for themselves any advantage over other beneficiaries. So, also, it must be held that the rights of the individual beneficiaries, as among themselves, relate back to the execution of the bond, and arise, by relation, out of the same transaction (that is, the execution of the bond), and as of the same time (that is, the date of its execution). On equitable principles, all individuals who may acquire rights under the bond stand in the same relation to each other as holders of several obligations secured by the same mortgage or deed in trust, specified therein, but issued at different dates. There is only one underlying equity, which necessarily, on equitable principles, protects all interested, whether it be the United States or individuals, share and share according to the proportions of their several claims. It is possible that, from the necessity of things, there may be exceptional instances, where one creditor has been allowed to proceed to a prior judgment; thus, through some laches, or in consequence of other liabilities being contracted subsequently, obtaining an unavoidable preference. In the case at bar, however, there are no circumstances which would have disenabled this court from compelling an equitable distribution among all the parties interested in the bond in issue here, if it had jurisdiction over them all.

This bill is brought against numerous individuals, over 70 in all, alleged to be creditors of one William Morgan, a contractor with the United States within the purview of the statute which we have cited. It alleges that Morgan, as contractor, gave the bond referred to in that statute, in the penal sum of $18,000; that the bond was executed by the complainant, the American Surety Company, as surety; that Morgan failed to comply with his contract; that the respondents maintain that Morgan has failed to pay them for labor and materials furnished, for which they have rights of action under the statute referred to; and that the respondents and other claimants have brought 81 separate and distinct suits against Morgan and the complainant, under the statute referred to, of which nearly all were brought on the law side of this court and are still pending there. The bill also states that parties have brought suits in the circuit court of the United States for the Southern district of New York; that still other parties assert claims which the statute cited protects, though they have not yet sued; and that the amount of all such claims is $26,993.57, exceeding the penal sum of the bond, besides whatever claim in behalf of the United States is protected by the bond, if anything. As to this, it alleges, in substance, that, Morgan having failed to perform his contract, the United States annulled the same, took possession of the work, and also of the materials on the work belonging to Morgan, and proceeded to complete it, and that the cost thereof, over and above the amount due Morgan in that behalf, could not, when the bill was filed, be ascertained; and there are some further allegations in the same connection which need not be repeated. The bill further alleges that the complainant fears, and has reason to fear, that judgments will be rendered on its bond in favor of the creditors of Morgan to an amount largely in excess of the penal sum thereof; that to defend the suits separately has

been, and will be, harassing, vexatious, and embarrassing to the complainant, because the complainant cannot be informed which of the suits will be first brought to trial, and judgments recovered therein against the complainant; that, in case judgments should be rendered amounting to the penal sum of the bond in the suits first brought to trial, the complainant would not, for want of time, be able to set up and plead the same in defense of the remaining suits; that, further, the complainant will be obliged, in the defense of the suits, to unnecessarily lay out large sums of money in court costs, fees, and otherwise; that, by reason of the matters stated, the complainant is in great danger of judgments being recovered against it for sums which may afterwards be claimed by the United States; that, on the whole, the complainant may be compelled to pay far in excess of the penal sum of its obligation; and that, by reason of the premises, the complainant cannot safely pay any of the claims, either of the individual creditors or of the United States, without the aid and protection of the court.

The bill further alleges that one Thomas E. Allen, who, either alone or jointly with another, is one of the alleged creditors of Morgan for a considerable amount, joined with Morgan in an agreement to indemnify the complainant from all loss by reason of the execution of Morgan's bond as surety for him; and, further, that it may be that, on final accounting between the United States and Morgan, there will be a balance due him from the United States. Morgan and Allen are each described in the bill as citizens of New Jersey, and of Trenton, in that state. Allen was made a defendant in the suit, and voluntarily appeared, so that the court has jurisdiction over him; but it does not appear that he has any suit pending against the complainant. The United States have brought no suit against the complainant, and were not sought to be made a party respondent in this bill, and probably could not have been; but in the early stages of the case, by the order of the court, notice was given to the attorney of the United States for this district of its pendency, and afterwards the United States filed a so-called intervention, without any pleadings or becoming formally a party, merely stating that the expense of completing the work largely exceeded the contract price, and also that the United States had suffered damages by reason of the nonperformance of the contract, whereby an action had accrued to the United States on the bond, but no attempt has been made by the United States to state, even approximately, the condition of their accounts with Morgan. One of the parties respondent is the McKiernan Drill Company, a corporation existing under the laws of the state of New York, the same state whose laws created the American Surety Company a corporation, so that both the complainant and one of the respondents are citizens of the same state.

The prayers for relief are quite numerous, and need to some extent separate consideration. The complainant states that it is ready and willing to pay the penal amount of its bond to whomsoever is lawfully entitled thereto, and therefore it prays that the pending suits at law may be restrained; that persons who have not commenced suit may be likewise restrained from commencing suit; that an account

may be taken with the United States; that the court will direct the complainant to whom to make payment; and that, thereupon, the complainant shall be fully exonerated and discharged from its liability on the bond. It also prays that a receiver be appointed of the moneys, if any, found to be due to Morgan on the contract and, for the materials taken by the United States, and that Morgan may be restrained from collecting any such moneys. It further prays that the amounts to come due from Allen to the complainant under the agreement of indemnity already referred to may be ascertained, and that the moneys received from the United States and from Allen be applied in payment of the various claims against Morgan, so that the complainant shall be required to pay only the balance remaining after such moneys are so applied.

On a previous occasion, this case was heard by the court on a motion for a temporary injunction. At that stage, the case was not well apprehended, and the result of the hearing was an order for a temporary injunction, if the complainant should deposit in court the amount of the bond, less a sufficient sum to protect the suits brought in the Southern district of New York. This the complainant never did, so that no injunction ever issued. The present hearing is on demurrers to the bill. A portion of the defendants have pleaded, a portion answered, and a portion demurred. At the hearing, it was found that some of the defendants had neither pleaded, demurred, nor answered; but all of these came into open court, and waived the right to demur, so the case is ripe for a hearing on the questions of law which the bill presents on its face.

It will be obvious that the first question which arises is as to the nature of this bill; that is to say, whether it is original or ancillary. Inasmuch as one of the respondents in the bill is a citizen of the same state as the complainant, it cannot be maintained, except as ancillary. As an ancillary bill, no defendants can be retained, and no decree can go against any defendant, except suitors in the cases on the common-law side of this court, already referred to. All persons named originally as parties defendant, except the suitors in this court and Allen, have been stricken from the bill. Therefore there is no difficulty in regarding it as an ancillary suit. In that view, neither the fact that the McKiernan Drill Company is a citizen of the state of New York, nor the question as to jurisdiction raised by some of the defendants, because nearly all the claims are below the jurisdictional amount, are of any consequence, even if the latter could be in any event.

Complainant calls our attention to the multiplicity of suits as a ground for equitable jurisdiction in this case; but mere multiplicity of suits affords no sufficient reason for equitable intervention, because the chancery courts cannot, as a matter of course, throw into hodgepodge numerous distinct rights which several individuals are entitled to pursue in the common-law courts, subject only to such consolidation as the rules of common law and the statute provide. Marshaling assets, however, is a favorite equitable ground of jurisdiction. In this case we have a quasi fund—that is, the penal sum of $18,000, named in the bond executed by the complainant—to be

distributed on an equitable basis among numerous claimants. It will be found, as we proceed, that this fund cannot be distributed expeditiously or justly without the aid of this court sitting in equity. On any of the suits at law which this bill is brought to restrain being brought to judgment, it would be impossible to determine in a manner which would do justice, either to the claimants or to the American Surety Company, the pro rata amount which should be awarded therein. The question must arise, once for all, in each of the common-law suits as to the actual amount of the claim in each of the others, and the determination must be final; and yet it could not be made in such way as to bind the other suitors.

A more serious difficulty would arise in the common-law suits with reference to the amounts and the rights of those claims not already in suit, but on which suits may be brought. The record shows that there are over 40 of this class, amounting, in all, to a very large proportion of the claims now in suit in this court, if not equaling the whole of them. But, on this bill, there is no difficulty in making a prompt pro rata distribution on each of the claims to which it is ancillary, to such an amount as will imperil no party concerned, and in afterwards retaining the bill for a further distribution, when the status of the claims not in suit, or sued in other jurisdictions, has been finally determined. This fact alone affords a secure basis for equitable jurisdiction. There could be no reasonable doubt that this court would have jurisdiction of a bill of this character, if all the claimants, including the United States, and also Morgan, the debtor, were parties thereto. The only question which seems to present to us any serious difficulty is whether we can retain this bill, in view of the fact that neither Morgan nor the United States, nor all the claimants, are parties hereto, and cannot be made such.

Before taking up this question, we will dispose of the prayers of the bill to the effect that the court ascertain whether, on a final settlement, there will be a balance due from the United States to Morgan, and that it realize from Allen on his agreement of indemnity given the complainant, and apply the moneys realized from the United States and Allen to the payment of the claimants, charging the complainant only the balance thus remaining unprovided for. The court can perceive no ground of equity in these aspects of the bill. The rights of the claimants against the complainant are absolute under the law, and are not to be postponed in order to enable the complainant to realize, in advance of payment of its just dues, moneys for its reimbursement. To hold otherwise would be equivalent to holding that no creditors can enforce payment against a surety until the assets of the principal debtor have been realized and applied on the debt, which is not the law in this jurisdiction or in the federal courts. The case stands entirely otherwise than it might if the claimants held securities which ought to be applied to the reduction of their debts before the complainant is called on to make good its obligation; but, in the case at bar, the right of subrogation, so far as its exists, and the consequent equitable security, belong to the complainant, and not to the claimants. Whether or not the joint holders of the claim against Morgan, in which Allen is interested, are

estopped from proceeding against the bond by reason of the fact that Allen, individually, in connection with Morgan, agreed to indemnify the complainant, is a matter for consideration when it hereafter arises at its proper stage of the case.

Returning to the question of the sufficiency of parties to this bill, we are first to observe that, as this is an ancillary bill, no persons could be made defendants except those already in the case, as, necessarily, the parties are limited to the complainant and those who have brought the suits on the law side of this court, to which this bill is incidental. Therefore, from the very nature of the controversy, it would seem that this bill ought to be sustained without further inquiry as to parties, because, in this respect, as it is ancillary, and limited in its purposes, and of a character which cannot directly affect the rights of any not made parties, it stands as an exception to the general rule that all interests necessary to enable a court in equity to close a controversy in all particulars should be before it. This exception has not been discussed by the authorities; but to disregard it would be in effect to hold that, in many cases, a defendant in a common-law suit could not avail himself of his equitable rights, as against the plaintiff, no matter how fundamental, nor how contrary to equity an unqualified judgment at law might be. The mere fact that an ancillary bill, intended to turn aside the inequities of a proceeding at law, is necessarily limited, as to its parties, to those in the suit at law, also necessarily, for the most part, excludes such bills from the general rule in regard to the joinder of defendants; and we can well rest the case on this point on that proposition.

With reference to an original bill, no case can be found which, in view of section 737 of the Revised Statutes, and of equity rules 22 and 47, goes further than California v. Southern Pac. Co., 157 U. S. 229, 15 Sup. Ct. 591. The opinion of the chief justice, at page 251, 157 U. S., and page 600, 15 Sup. Ct., puts this question:

"Can the court proceed to a decree, as between the state and the Southern Pacific Company, and do complete and final justice, without affecting other persons not before the court, or leaving the controversy in such a condition that its final termination might be wholly inconsistent with equity and good conscience?"

Although it was impossible, in that case, for the decree to directly affect the interests of the city of Oakland, and although the city of Oakland could not be made a party without ousting the jurisdiction of the court, yet the court was disinclined to proceed, stating, at page 257, 157 U. S., and page 602, 15 Sup. Ct., as follows:

"We have no hesitation in holding that, when an original cause is pending in this court, to be disposed of here in the first instance, and in the exercise of an exceptional jurisdiction, it does not comport with the gravity and finality which should characterize such an adjudication to proceed in the absence of parties whose rights would be in effect determined, even though they might not be technically bound in subsequent litigation in some other tribunal."

The purport of this seems to be that the court held itself unable to dispose of the case before it without passing directly on the questions of law which underlay the rights claimed by the city of Oakland. So, also, another instance in which the interests of parties not in the bill were directly involved is found in Gregory v. Stetson, 133 U. S. 579,

10 Sup. Ct. 422, where the court was asked, on a bill in equity, to disturb the actual status of a fund, without making parties to the bill all those who had an apparent interest therein. But, in the case at bar, neither of these classes of difficulties arise. A decree can well be shaped on this bill which will not involve, theoretically or practically, any claims made by any persons not parties to it. Therefore, there will not be found in the condition of the case any practical difficulty in the way of applying here the broad exception that, from the necessity of things, ancillary bills are not ordinarily within the general rule to which we have referred with reference to making parties defendant.

The status is not much unlike that of Wood v. Dummer, 3 Mason, 308, 30 Fed. Cas. 435. In that case, the bill was brought by a part of the holders of the circulating notes of an insolvent incorporated bank against some of the stockholders, it being shown that it was impossible to bring all the stockholders before the court. The bill was sustained, but, in framing the decree, Mr. Justice Story said (at page 322, 3 Mason, and page 440, 30 Fed. Cas.) that, in proceeding to do equity to those before the court, the court must take care that it was not the instrument of injustice to others who were not represented; and he added:

"Non constat, if the whole fund is taken from the defendants in favor of the plaintiffs, that there will remain any solvent stockholders from whom the other creditors can claim any share."

The record before the court was criticised by it as insufficient to enable it to make a just apportionment; so that, on the whole, the court made an apportionment based on the number of shares held by the defendants with reference to the entire capital stock. A more accurate basis of computation can easily be found in the case at bar, without thereby possibly incurring the hazard of doing injustice to any other party. This can be done even more satisfactorily than was done in Wood v. Dummer, or than was practicable in the several classes of cases referred to in Story, Eq. Pl. (10th Ed.) § 96, where, without the aid of section 737 of the Revised Statutes or equity rules 22 and 47, equity courts have proceeded to decrees without having before them all the parties usually regarded as interested in the controversy.

It must be understood that we are referring to instances in which original bills have thus been sustained, not because we intend to qualify what we have said as to the distinction between them and ancillary bills, but for the purpose of illustrating that a decree can go in this case without the possibility of doing injustice to interests not represented. However it might be, if we had before us an ancillary bill where it was impossible to proceed to a final decree without doing injustice to interests not represented, and though, under such circumstances, we might hold that the distinction which we make in behalf of ancillary bills would necessarily be limited, yet, as the case at bar does not involve any such difficulties, we think we ought to proceed to a decree, notwithstanding the relief which can be granted is not complete, in the sense in which it would be if all the claimants were before the court.

In view of what we have said, the bill may be sustained, so far as to take an accounting of all claims which are in suit in this court against the American Surety Company on its bond in issue here, and to order pro rata payments thereon, but with directions that tne amount of the claims of parties not subject to our jurisdiction shall, for the purpose of primary distribution, be so estimated as not to jeopardize the complainant, and that there shall be included in that amount the balance due the United States, if anything, and the claims not in suit as well as those which are. Thereupon, a primary distribution can be ordered accordingly, and the bill can be retained for further distribution if subsequent events justify it. Those portions of the bill which pray for the application of moneys for which realization is asked on account of the possible indebtedness of the United States to Morgan, and by reason of Allen's agreement for indemnity, having been specially demurred to, the demurrer, to that extent, will be sustained, and those portions of the bill will be adjudged insufficient; and it will be further adjudged that there will be no further proceedings against Allen in this case.

The claims covered by this bill, or by stipulations in the suits themselves, or, so far as not admitted, no injunction can issue restraining the prosecution of those suits so far as necessary to ascertain the validity and amount of the several claims in dispute; the burden of the taxable costs of such determinations resting on the complainant with reference to any suit in which a valid claim is found to exist.

So far as suits on the common law side of this court represent lawful claims, the complainant is liable for taxable costs to the time of the filing of this bill. Whether or not it will be liable for further costs will be a matter for future determination. The equitable rule applies here which was made effective by the supreme court in Railroad Co. v. Clark, 153 U. S. 252, 14 Sup. Ct. 809; and, before this bill can proceed further, complainant must amend it by offering to pay taxable costs to the time of filing of the bill in each case in which a valid claim exists, and must bring into court sufficient to pay all such costs, with registry commissions and other charges in connection therewith.

Morgan was made a defendant, but he was beyond the jurisdiction of the court, and no service was made on him; neither has he ever appeared. The court understood that he was not found within the district in connection with the common-law suits referred to, that no service was made on him, and that he never appeared in those suits, and, therefore, it permitted his name to be stricken out as a defendant; but, on a careful examination of the bill, it is found that these facts thus understood by the court are not alleged, as they must be before a decree can be entered.

In view of the necessity of the bill being amended in the respects pointed out, the only order which can be made at present is as follows: Leave is granted the complainant to amend, in accordance with the opinion of the court filed this day, on or before the 1st day of August next, and, if not so amended, the bill will be dismissed as of course, without prejudice and without costs.