UNITED STATES, to Use of SALEM–BEDFORD STONE CO., v.
SHERIDAN et al.

(Circuit Court, W. D. Kentucky. March 17, 1902.)

1. FEDERAL COURTS—ACTION ON BOND OF GOVERNMENT CONTRACTOR—NONRES
IDENT SURETY.
In view of the provisions of Act Aug. 13, 1894 (28 Stat. 279 [U. S.
Comp. St. 1901, p. 2315]), which requires surety companies before they
can be accepted as surety on a bond given to the United States by a
contractor for government work to file a power of attorney and consent to
certain conditions as to service of process and entry of appearance in the
district where the bond is given, a petition against such a company as
surety on a contractor's bond in the district where it was given, where
service appears to have been made on its authorized agent, is not demurrable on the ground that it is not an inhabitant of the district.

2. SAME—JURISDICTION—UNITED STATES AS NOMINAL PLAINTIFF.
Under Act Aug. 13, 1894 (28 Stat. 279 [U. S. Comp. St. 1901, p. 2315]),
which requires contractors for government work to give bonds conditioned
for the prompt payment of all persons supplying labor or materials in
the prosecution of the work, and authorizing such persons in case of nonpayment "to bring suit in the name of the United States for his or their
use and benefit against said contractor and sureties," such a suit is not
one brought by the United States as plaintiff, within the meaning of the
judiciary act, so as to give a federal court jurisdiction, without regard to
the citizenship of the parties or the amount involved, since the United
States is merely a formal party, without interest, and to confer jurisdiction
on a federal court there must be diversity of citizenship, and also an
amount involved exceeding $2,000, exclusive of interest and costs.

At Law. On demurrer to petition.

Gibson, Marshall & Gibson, for the United States.

St. John Boyle, for defendant Fidelity & Deposit Co. of Maryland.

EVANS, District Judge. The United States, for the purpose of
making certain public improvements at lock No. 8, on the Kentucky
river, entered into a contract with the defendant Thomas A. Sheridan,
who agreed to construct the same. Previous to the beginning of the
work Sheridan was required to execute, and did execute, a bond to the
United States conditioned according to the requirements of the act
"for the protection of persons furnishing materials and labor for the
construction of public works," approved August 13, 1894 (28 Stat. 278
[U. S. Comp. St. 1901, p. 2523]), which bond was dated August 30,
1898, and having thereon as surety the Fidelity & Deposit Company
of Maryland. The Salem-Bedford Stone Company supplied certain
material and labor to Sheridan in the construction of the work, and for
the materials, etc., thus supplied, the contractor paid the Salem-Bedford Stone Company all except a balance of $1,829.28, which became
due early in the year 1900. The plaintiffs, calculating and manifestly
including the interest on that balance, and possibly earlier balances, up
to the time of instituting this action, sued the defendants jointly for the
sum of $2,153.41. Sheridan has not been served with process, but
process was executed upon Willis S. Mullen, the agent of the corporation defendant in this district, by the marshal of this court. Under
these circumstances the corporation defendant has filed a demurrer
to the petition. By the first ground it is insisted that as it appears

upon the face of the petition that the surety is a Maryland corporation, and not an inhabitant of Kentucky, jurisdiction of its person cannot be obtained in this district. We think, however, in view of the nature of the obligation sued on, which was executed in the district of Kentucky, and whch is dated August 30, 1898, and in view of the character and nature of the defendant surety itself, the court, in passing upon this ground of demurrer, must look to and must consider, as part of the law of the case, the provisions of the act of August 13, 1894 (chapter 282, 28 Stat. 279 [U. S. Comp. St. 1901, p. 2315] ), because the operation of those provisions may give a right to sue the corporation here, although it is not an "inhabitant" of this district, in this respect modifying the provisions of the judiciary act. The act of 1894 requires that, before such a company as the corporation defendant shall be accepted as surety on bonds given to the United States, it shall be approved, and shall file a certain power of attorney, and shall consent to certain conditions as to service of process and entry of appearance in any district where a bond is given upon which it is surety. In view of all these provisions of the laws of the United States, we conclude that the proper way to test the question of the jurisdiction of the court over the person of the surety on such a bond, where there appears to have been service upon its authorized agent, is not by a demurrer, but by a special plea to the jurisdiction, or by a motion to quash the service of the summons, or by some other step by which the issue can be raised as to whether such jurisdiction has been acquired by such service of process on defendant's agent as might appear from the marshal's return thereof to have been made, notwithstanding such defendant is not an inhabitant of the district. See Shainwald v. Davids (D. C.) 69 Fed. 704. In view of the congressional legislation referred to, and which seems to modify the judiciary act so as to permit suits in certain cases against a defendant who is not an inhabitant of the district, the demurrer does not reach the objection thus sought to be raised, and it is therefore overruled.

2. A second ground of demurrer is that the court is without jurisdiction of the action because the amount in controversy does not exceed $2,000, exclusive of interest and costs, and this raises a more difficult question, and one about which the court is not altogether free from doubt. If the court's jurisdiction in case of the requisite diverse citizenship does not reach such a case where the amount involved is less than $2,000, exclusive of interest and costs, then, upon the most familiar authorities, that objection cannot be evaded by adding interest to principal, nor by overstating what is otherwise shown to be the amount of principal due, in order to make the sum exceed $2,000. Moore v. Town of Edgefield (C. C.) 32 Fed. 498; Brown v. Webster, 156 U. S. 328, 15 Sup. Ct. 377, 39 L. Ed. 440. By the provisions of section 629, cl. 3, Rev. St. U. S. [U. S. Comp. St. 1901, p. 503], the circuit courts of the United States were given jurisdiction over suits at common law where the United States or any officer suing under the authority of an act of congress are plaintiffs, precisely as the district courts were given similar jurisdiction under the third clause of section 563 [U. S. Comp. St. 1901, p. 456]. Under these provisions, if the United States sued as a plaintiff the amount involved was of no im-

portance, inasmuch as the jurisdiction of the court, where the United States sued as a plaintiff, was not made in any way to depend upon the amount in controversy in common-law actions. By the first section of the judiciary act of March 3, 1887 (24 Stat. 552, corrected by the act of August 13, 1888, 25 Stat. 433 [U. S. Comp. St. 1901, p. 514] ), very material changes were made in the laws regulating the jurisdiction of the federal courts; but, as distinctly held in the case of U. S. v. Sayward, 160 U. S. 493, 16 Sup. Ct. 371, 40 L. Ed. 508, these provisions did not so change the law regulating the jurisdiction of federal courts in common-law cases, where the United States sued as plaintiff, as in any wise to make that jurisdiction depend upon the amount in controversy. In this case the name of the United States is used as a plaintiff, but is so used expressly for the benefit of the Salem-Bedford Stone Company alone. The right thus to sue is claimed under the provisions of the act of August 13, 1894 [U. S. Comp. St. 1901, p. 2315], entitled "An act for the protection of persons furnishing materials and labor for the construction of public works," and which is in this language:

"Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs, upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment, and execution: provided, that such action and its prosecutions shall involve the United States in no expense.

"Sec. 2. Provided that in such case the court in which such action is brought is authorized to require proper security for costs in case judgment is for the defendant..

"Approved August 13, 1894."

While the petition shows that this action is literally brought in the name of the "United States as plaintiff," is this true in the sense of that phrase as used in the judiciary acts? Does the United States in fact "sue" at all in the proper and actual sense of that word? Is the United States an actor in the pending litigation? Could the United States in any wise control it? Does not the United States merely permit the use of its name for the benefit of another, and is not the only connection of the government with the case merely passive and formal? The answer to all of these questions should probably depend upon the test of whether the United States is actually a party in interest in the litigation, or is merely a formal party under the permission of an act of congress, in order that there may not be a technical "variance" growing out of the fact that the bond sued upon is made

to the United States alone as the party of the first part, the Salem-Bedford Stone Company not being named in it. While time out of mind the official bonds of public officers and executors, administrators, guardians, and the like have been executed to the state or the commonwealth, still any individual aggrieved by any wrongful act of such officer or personal representative could, without the permission of the state, sue upon the bonds, though, for technical reasons now well-nigh obsolete, such person must use the name of the state ex relatione. But neither the United States in the one case nor the state in the other could recover in its own name for any wrong done to a mere individual, because it would itself have no cause of action. It is true that the act of August 13, 1894 [U. S. Comp. St. 1901, p. 2523], was enacted for beneficial purposes, and possibly those benefits to a certain extent may extend to the United States in making more certain and prompt the obtaining of materials and labor by contractors upon public works who have given the bond with surety upon which outside parties can rely; but it is apparent that those benefits to the United States are quite incidental, if not speculative. The real purpose of the legislation was obviously to provide a guaranty of payment to laborers and materialmen through the medium of the bond required, inasmuch as they could not, without permission of the government, acquire any lien upon works of public improvement; and while the United States so far takes care of the interests of those persons as to include in the bond a clause for their protection, instead of allowing them a lien, still the bond is made payable to the United States, and the United States might, of course, in its own name sue upon it to enforce its own rights and the duties of the contractor to it, and of any such suit this court would clearly have jurisdiction, regardless of the amount involved, because then the United States would be the real plaintiff,—the real party in interest. But can it be maintained that congress, by permitting private litigants, under certain circumstances stated in the act, to use the name of the United States in their suits on the bond, intended thereby also to enlarge the jurisdiction of the federal courts by providing that the use of the name of the United States by such litigant should mean that such cases were to be included among those of which federal courts were given jurisdiction, upon the ground that the "United States sued as plaintiff" within the meaning of the judiciary act, when in fact the United States did not, in any essential sense, sue at all, and had no kind of legal interest in the claim asserted by the real party, to wit, the materialman. It seems to me not. In the case of U. S. v. Henderlong (C. C.) 102 Fed. 2, the jurisdiction of the federal courts of such a case when the amount sued for is less than $2,000 was expressly denied upon reasoning which seems to be sound, and the result would be the same whatever might be the amount of the demand, in the absence of diverse citizenship. It cannot be doubted that the corporation plaintiff in this case might use the name of the United States for its own use and benefit in any litigation in a state court, for it would have the express permission of congress for so doing under the conditions named in the act; but the question to be decided on this ground of demurrer is one of juris-

dictional amount, and it seems to me that, when we properly construe the laws of the United States bearing upon that question, it will be found that, in order to maintain the jurisdiction in this court in a case like this, the amount claimed should exceed the sum of $2,000, besides interest and costs.

The Salem-Bedford Stone Company is alleged to be a citizen of Kentucky, and the defendant the Fidelity & Deposit Company is alleged to be a citizen of Maryland. This gives the diverse citizenship required, if, as we suppose is true from what has been stated, the defendant under the act of August 13, 1894 [U. S. Comp. St. 1901, p. 2523], referred to, is suable in this district, although not an inhabitant thereof. This diverse citizenship alone would give the court jurisdiction, if the plaintiff's demand exceeded, exclusive of interest and costs, the sum of $2,000, though, as we have seen, this result could not in any way be influenced by the fact that the Salem-Bedford Stone Company, in suing upon its demand, had used the name of the United States as a formal plaintiff, suing for its use and benefit.

It may be proper to add that the privilege, under the judiciary act, of being sued only in that state of which it is an inhabitant, is personal, and may be waived. It doubtless was waived by the corporation defendant in this instance, if it, in order to be qualified to become surety on the bond sued on, complied with the act of 1894. See, also, Empire Min. Co. v. Propeller Tow-Boat Co. (C. C.) 108 Fed. 900; Whitworth v. Railroad Co. (C. C.) 107 Fed. 557, and cases cited.

Inasmuch as the demand in this case is for less than $2,000 when the interest is excluded, the demurrer to the petition must be sustained for want of jurisdiction of the action.