UNITED STATES v. CHURCHYARD et al. SAME v. FIDELITY & DEPOSIT CO. OF MARYLAND. SAME v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court, D. Rhode Island. August 17, 1904.)

Nos. 2704–2713, 2721, 2722, 2724–2728.

1. FEDERAL COURT—JURISDICTION—ACTION ON CONTRACTORS' BOND.

Under Act Aug. 13, 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], requiring contractors for government work to give bonds conditioned, first, for the performance of the contract, and, second, for the prompt payment of all persons supplying labor or materials in the prosecution of the work, and authorizing such persons in case of nonpayment "to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties," such a suit is one in which the United States is plaintiff within the meaning of section 1 of the judiciary act of August 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], and of which a federal court has jurisdiction regardless of the citizenship of the parties or the amount in controversy.

At Law. On motions to dismiss for want of jurisdiction.

Edward D. Bassett, for Burrows & Kenyon.

Darius Baker, for Swinburne, Peckham & Co.

Wm. B. Greenough, for Fidelity & Deposit Co. of Maryland.

Edwards & Angell and James E. Smith, for United States Fidelity & Guaranty Co.

BROWN, District Judge. These actions of debt are brought in the name of the United States on bonds given by Churchyard, a contractor. In each case the beneficial or use plaintiff is a person who furnished labor or materials of less than $2,000 in value for public works of the United States. The plaintiffs rely upon the act of Congress of August 13, 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], entitled "An act for the protection of persons furnishing materials and labor for the construction of public works." Churchyard's bond to the United States conformed to that act. A breach of the condition "to promptly make payments to all persons supplying him with labor and material in the prosecution of the work" is assigned.

Unless this is a controversy "in which the United States are plaintiffs," or unless the said act confers jurisdiction where the amount is less than $2,000, the motions to dismiss must be granted, for all other statutory provisions are coupled with the requirement of a jurisdictional amount larger than is involved in any one of these cases.

The defendants rely chiefly upon the decisions in United States v. Henderlong (C. C.) 102 Fed. 2, and United States v. Sheridan (C. C.) 119 Fed. 236. In the first case it was held that:

"The United States are neither the legal nor equitable plaintiffs in the present action. They are seeking no remedy for any injury to, or for the withholding of, any of their rights; nor have they any equitable right to or interest in the thing sued for. They have neither the legal right of action nor any equitable interest in the matter in controversy. The United States are simply a formal or modal party; a mere name, used for convenience only."

It was also stated:

"No reason is perceived why the courts of the United States should take cognizance of the suits of laborers and materialmen, unless the citizenship of the parties and the amount involved in the controversy are such as would give jurisdiction as in the case of other suitors. These views find support in the decisions of the Supreme Court in Browne v. Strode, 5 Cranch, 303 [3 L. Ed. 108]; McNutt v. Bland, 2 How. 9 [11 L. Ed. 159]; Walden v. Skinner, 101 U. S. 577, 588, 589 [25 L. Ed. 963]."

The action was dismissed for lack of jurisdiction.

In United States v. Sheridan (C. C.) 119 Fed. 236, 239, it was said:

"But can it be maintained that Congress, by permitting private litigants, under certain circumstances stated in the act, to use the name of the United States in their suits on the bond, intended thereby also to enlarge the jurisdiction of the federal courts by providing that the use of the name of the United States by such litigant should mean that such cases were to be included among those of which federal courts were given jurisdiction, upon the ground that the 'United Stated sued as plaintiff' within the meaning of the judiciary act, when in fact the United States did not, in any essential sense, sue at all, and had no kind of legal interest in the claim asserted by the real party, to wit, the materialman? It seems to me not."

It was held that, in order to maintain jurisdiction in a case of this character, the amount claimed, exclusive of interest and costs, should exceed the sum of $2,000.

There are many decisions of the Supreme Court to the effect that in determining whether a case is truly a controversy between citizens of different states the substantial, rather than the formal, parties should be regarded. In Stewart v. Baltimore & Ohio Ry. Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537, it was said:

"For the purposes of jurisdiction in the federal courts, regard is had to the real, rather than to the nominal, party."

United States v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121, is also an illustration of this principle. In that case it was held that the Attorney General has authority to file a bill in equity in the name of the United States to set aside a patent of public land alleged to have been obtained by fraud or mistake, where the government has a direct interest in the tract patented, or is under an obligation respecting the relief invoked by the bill. But the court also said (page 346, 127 U. S., page 1088, 8 Sup. Ct., 32 L. Ed. 121):

"An inspection of the record shows that the government, though in name the complainant, is not the real contesting party to the title or property in the land in controversy. It has no interest in the suit, and has nothing to gain from the relief prayed for, and nothing to lose if relief is denied."

For this reason, though jurisdiction was retained, it was held that the complainants could not invoke the rule that the United States are not bound by statutes of limitations, nor barred by laches. In United States v. Bell Telephone Co., 167 U. S. 224, 17 Sup. Ct. 809, 42 L. Ed. 144, it was said (pages 264, 265, 167 U. S., page 820, 17 Sup. Ct., 42 L. Ed. 144):

"Suits may be maintained by the government in its own courts to set aside one of its patents not only when it has a proprietary and pecuniary interest in the result, but also when it is necessary in order to enable it to discharge its obligations to the public, and sometimes when the purpose and effect are simply to enforce the rights of an individual. * * * Now, in the case at bar the United States has no proprietary or pecuniary interest. The result, if favorable to it, would put no money in its treasury or property in its possession. It has a standing in court either in the discharge of its obligation to protect the public against a monopoly it has wrongfully created, or simply because it owes a duty to other patentees to secure to them the full enjoyment of the rights which it has conferred by its patents to them. Perhaps both of these objects were in view. In so far as the latter was and is the purpose of this suit, it brings it within the rule laid down in United States v. Beebe, supra."

From these and other decisions it is apparent that the question whether the United States is a party is not dependent merely upon pecuniary interest. See, also, In re Debs, 158 U. S. 584, 586, 15 Sup. Ct. 900, 39 L. Ed. 1092. What is the nature of the interest of the United States in the actions provided for by the act? In United States v. Sheridan (C. C.) 119 Fed. 236, 239, it was said:

"It is true that the act of August 13, 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], was enacted for beneficial purposes, and possibly those benefits to a certain extent may extend to the United States in making more certain and prompt the obtaining of materials and labor by contractors upon public works who have given the bond with surety upon which outside

parties can rely; but it is apparent that those benefits to the United States are quite incidental, if not speculative. The real purpose of the legislation was obviously to provide a guaranty of payment to laborers and materialmen through the medium of the bond required, inasmuch as they could not, without permission of the government, acquire any lien upon works of public improvement."

The probable object of the act of Congress was to provide an equivalent or substitute for the familiar legislation for the protection of laborers and materialmen. See Standard Oil Co. v. Trust Co., 21 App. Cas. D. C. 369, 375. The general nature of this kind of legislation is set forth in the able opinion of Judge Lurton in Jones v. Great Southern Fireproof Hotel Co., 86 Fed. 370, 383, 30 C. C. A. 108, cited with approval in Great Southern Fireproof Hotel Co. v. Jones, 193 U. S. 532, 549, 550, 24 Sup. Ct. 576, 48 L. Ed. 778. The justification for legislation by Congress upon this subject must be that, as a builder of public works, it is entitled to provide that those persons who incorporate their labor and materials into public works shall receive protection. It hardly can be doubted that Congress might have provided for a contract between the government and the contractor for public works which would give to the government the right to withhold the contract price until the satisfaction of claims for labor and material, or permit the United States to pay directly the laborers and materialmen in case of default by the contractor. Redfield v. Windom, 137 U. S. 636, 11 Sup. Ct. 197, 34 L. Ed. 811. Provisions of this general character must be regarded as sanctioned "by the dictates of natural justice." Great Southern Fireproof Hotel Co. v. Jones, 193 U. S. 532, 549, 24 Sup. Ct. 576, 48 L. Ed. 778. If it is competent for Congress to provide for such protection by requiring from the contractor a contract with the United States, and by permitting the laborer or materialman to avail himself of this contract (as I assume, since the validity of the act is not questioned), is it not also competent for Congress to permit the laborer or materialman to avail himself of the status of the United States as a suitor in the United States courts, and to maintain suit irrespective of the amount involved, and is it not reasonable to suppose that this was the intent?

I cannot agree with the statement in United States v. Henderlong, supra, that the United States is not the legal plaintiff in this action. The contract is, in the strictest sense, a contract between the United States and the contractor for public works. The defendant has bound himself to the United States to the amount of the penal sum of the bond. The penalty is defeasible upon two conditions: First, that the contractor shall do his work; second, that he shall pay his laborers and materialmen. These are actions of debt, upon which ordinarily judgment is rendered for the penal sum, to be discharged upon payment of the amount of damages. Farni v. Tesson, 1 Black, 309, 17 L. Ed. 67; 3 Am. & Eng. Enc. Pl. & Pr. 670. That laborers and materialmen are authorized to institute an action does not alter the legal status of the contract, or change the legal parties to the contract. A failure to pay laborers and materialmen is a breach of an obligation to the United States assumed by the contractor under the requirement of an act of Congress. It was the apparent intent

of Congress to work out the protection of materialmen and laborers through a contract between the United States and the contractor. In determining the intent of Congress, we should look rather to the act itself than to the particular pecuniary interest of the United States in the special case before us. It is apparent that the actions provided for by the act embrace both those that may pecuniarily affect the United States and those that may not. As ordinarily interpreted, the act requires the usual penal bond with a single penalty and two distinct conditions: First, to do the work; second, to pay laborers and materialmen.

In American Surety Co. v. Lawrenceville Cement Co. (C. C.) 96 Fed. 25, 26, Judge Putnam, says:

"The United States, by the force of the statute which we have cited, voluntarily make themselves trustee alike for their own interests and for the interests of the individuals intended to be protected; and, having thus voluntarily created and accepted a trust, they are barred by equitable principles from asserting for themselves any advantage over other beneficiaries."

A suit instituted by a materialman may thus directly affect the security of the United States. Was it the intent of Congress to create new and unusual actions, and to permit a multitude of simultaneous and independent suits to be instituted on bonds of this character, and to preclude the contractor and sureties from pleading, in bar of a second suit, a former judgment for the penal sum of the bond? The practical inconvenience of so construing this statute as to allow a large number of independent suits has been well illustrated in this circuit. See American Surety Co. v. United States (C. C. A.) 123 Fed. 287; American Surety Co. v. Lawrenceville Cement Co. (C. C.) 96 Fed. 25; Id., 110 Fed. 717, 913. On suits against a surety company judgments were had greatly in excess of the amount of its liability on a bond.

The bond should not be regarded as containing an agreement between the obligors and third parties, but as a contract between the United States and the contractor, in which the United States has a double interest: First, a direct pecuniary interest; and, second, an interest, as a constructor of public works, to protect those persons who incorporate their labor or materials into the works. Although a private person has the right to institute a suit, yet the bond is one for the protection of the United States and other persons as well, and a judgment upon the bond should accrue to the benefit of all in interest. Because a privilege to institute suit upon the contract is given to beneficiaries, it does not follow that the liability to suit of the obligors and sureties is thereby enlarged. The United States is the legal plaintiff, the basis of the action is a contract between the United States and a contractor, and the statute in express terms authorizes the suit to be brought in the name of the United States.

It is also urged by plaintiffs' counsel that the provisions allowing suits to be brought on certified copies of the contract and bond and for security for costs, etc., are applicable only to courts subject to congressional legislation, and therefore that it is apparent that the intent was to give all the privileges of a suit in the name of the United States, except as expressly limited. The present cases are within

the letter of the statute which gives jurisdiction to the United States courts, irrespective of the amount involved, when the United States is plaintiff. Is there any sufficient reason for denying jurisdiction? Persons having the legal right may sue at law in the federal courts without regard to the citizenship of those having the equitable interest. Carter on Jurisdiction of Federal Courts, p. 139. The legal right is in the United States. It is true that the courts will "look to things, not names; to the actors in controversies and suits, not to the mere forms or inactive instruments used in conducting them in virtue of some positive law"; but it does not invariably follow that the rule shall be so applied as to break down the distinction between legal and equitable rights, or the distinction between legal and beneficial or use plaintiffs. Established forms of contract, forms of action, and modes of procedure are often matters of substance. When Congress, to work out a specific purpose, requires a contract with the United States, and authorizes a suit on that contract, we are not at liberty to say that this mode of effecting the object is all unreal, nominal, and unsubstantial. Even if the form established for working out the purpose were somewhat fictional in character, we should hesitate to destroy the statutory machinery if we would thereby practically frustrate the purpose of the act or impair its value.

If suits of this character are to be limited to those involving more than $2,000, this practically will cut off from the courts of the United States laborers and small materialmen. If they resort to a state court, they may meet the objection that their suit is brought upon a copy of the bond, and not upon the original, and that the modes of procedure of state courts are not subject to congressional legislation. Should a laborer bring suit in a state court and secure judgment, the United States, upon subsequently suing in a United States court upon this bond for a breach of the obligation to construct the works, may be met by a plea of former judgment of a state court, and thereby possibly be precluded from a second action, and be compelled to resort to intervention in the state court. The existence of a single penalty with two distinct conditions affecting different interests makes the case an unusual one. The decisions in United States v. Henderlong (C. C.) 102 Fed. 2, and United States v. Sheridan (C. C.) 119 Fed. 236, I regard with great respect. They proceed, however, upon the ground that the United States is a purely formal or modal party in cases where there is a breach of the obligation to pay laborers and materialmen. In neither case was it considered that the actions provided for might affect the pecuniary interest of the United States and its security under the bond, as was the case in actions brought in this circuit. In United States v. Sheridan the matter of benefits to the United States was considered, and it was thought that these were quite incidental, if not speculative. Possibly it was a purpose of the act to benefit the United States by making more certain and prompt the obtaining of labor and materials by contractors. It was possibly the view of Congress that the government, as a builder of public works, is under such an obligation to those who incorporate their labor and material therein that the United States may insure their payment by exacting a contract for

their benefit; and that in a suit upon such a contract the United States has the interest of an insurer of persons, in whose protection it has an interest analogous, perhaps, to that which it has in a suit to cancel a patent for lands or for an invention, not because of any benefit to itself, but because of an obligation to the public or individuals. If Congress had sufficient grounds for enacting legislation of this class, has not the United States, as a legal party to the suit, an interest in the suit similar to, that of Congress in passing the act authorizing it? There is some inconsistency in saying that the United States has such an obligation to laborers that Congress may require a contract for their benefit, but no such obligation as to give the United States an interest in the suit brought to enforce the contract.

The act has proved difficult to interpret and to apply. Its intended benefits have been impaired by expensive litigation over its interpretation. Congress has put the plaintiff in the shoes of the United States as a suitor, without expressly taking away the right to sue in a court of the United States. Adler v. Newcomb, 2 Dill. 45, Fed. Cas. No. 83. Shall we take this right away by implication? The bar, in many actions in this circuit, have interpreted this act as conferring jurisdiction upon the United States courts. It seems by no means certain that it was not the intent of Congress to subrogate the materialman and laborer to all the rights of the United States as a suitor on its own contract. The danger that statutes conferring jurisdiction on United States courts may be abused through the use of nominal parties is to be guarded against. When Congress, however, with power to confer jurisdiction, expressly declares that the United States shall take a contract upon which persons may sue in the name of the United States, is there any practical danger in saying that Congress meant exactly what it said, and meant it with no further qualification than that expressly stated?

I have before me, as the legal plaintiff, the United States; a legal cause of action—a contract between the United States and the contractor. It is the ordinary rule that the existence of a beneficial or use plaintiff does not affect the legal status of the case. To one bred in common-law practice, this is sufficient, in the absence of strong reasons to the contrary. In the case of Boston Elevated Ry. Co. v. Grace & Hyde, 112 Fed. 279, 50 C. C. A. 239, the Circuit Court of Appeals for this Circuit had occasion to consider actions for use and benefit, and the divisibility of such causes of action; and that case well illustrates the difficulties of a departure from a common law status. While in some cases to look through the nominal parties to the real parties in interest is easy, in other cases, where, in a single legal contract, there is a diversity of beneficial interests, a splitting up of the case is impracticable. Such a division seems impracticable in a case where a suit is for the penal sum of a bond in which various persons have an interest. The fact that in the ordinary bond the United States has a real and substantial interest seems a fair reason for adopting the view that it was the intention of Congress that in all suits for use the plaintiff should have the general rights of the United States to sue in federal courts.

The plaintiffs' counsel contend that jurisdiction can be supported on two distinct grounds: First, because the United States has in fact such an interest in these suits as answers the authorities and gives a reasonable basis for federal jurisdiction; second, because, in addition to the provisions which authorize the suit to be brought in the name of the United States, are provisions regulating the procedure in the suits, which seem to be applicable only to federal courts, thus showing an intent that the federal courts were to have jurisdiction. I am of the opinion that we, at least, can say that the cases are within the letter of the statute conferring jurisdiction on the United States courts, and that it is not so clear that they are contrary to the spirit of that statute as to justify a dismissal. The statute was before the Circuit Court of Appeals for the Eighth Circuit in United States v. National Surety Co., 92 Fed. 549, 34 C. C. A. 526. The amount involved was less than $2,000, and yet the court took jurisdiction of the action, though, so far as the report of the case shows, the question of jurisdiction was not expressly raised.

The argument that it could not have been the intention of Congress to enlarge the jurisdiction of the United States courts by allowing claims for less than $2,000 to be prosecuted seems by no means conclusive. The public works of the United States are not so numerous that the courts of the United States will be overwhelmed by petty suits. The jurisdiction of the United States courts in admiralty over the small claims of seamen has been beneficial, and has served rather to prevent the contesting of small claims than to overcrowd the courts with petty suits. The existence of speedy remedies, free from technical obstacles, encourages the prompt payment of debts. To hold that laborers and materialmen employed on public works of the United States can secure their pay through a suit in a United States court on a bond given to the United States will tend to promote the object of the act, and to simplify the procedure to enforce it.

The motions to dismiss for lack of jurisdiction are denied.