AMERICAN SURETY CO. OF NEW YORK v. LAWRENCEVILLE CEMENT CO. et al.

(Circuit Court, D. Maine. August 23, 1901.)

No. 513.

1. INTEREST—WHEN RECOVERABLE—SURETY.
   A surety on the bond of a contractor for government work, which has been ready and willing at all times since the default of its principal to fulfill its obligation to the extent of its liability, but has been obliged to invoke the aid of a court of equity to marshal and adjust the claims, which exceed the penalty of the bond, cannot be charged with interest on the amount of such penalty because of the delay incident to such proceedings.

2. CONTRACTS FOR GOVERNMENT WORK—BONDS OF CONTRACTOR—CONSTRUCTION OF STATUTE.
   Act Aug. 13, 1894 (28 Stat. 278), requiring the bond of a contractor for government work to be conditioned that he will promptly make payment to all persons "supplying him labor and materials in the prosecution of the work," should receive the liberal construction necessary to effect its purpose. It is not to be strictly limited, like mechanic's lien statutes, so as to protect only those supplying labor or materials which add to the value of the improvement or structure, nor, on the other hand, should it be extended to claims for labor or materials which only incidentally relate to the prosecution of the work, such as the construction or permanent improvement of the plant or equipment of the contractor, which are capable of use in other work, or to the ordinary claims of a public carrier for freight, for which the law gives a lien; but this limitation does not apply to those making incidental repairs to equipment, or to truckmen or others who transport materials for short distances, and who, although having a lien, are not expected, in the usual course of business, to exact payment before delivery.

3. SUBROGATION—SECURITY TAKEN BY SURETY—PRIVITY
   A creditor of a contractor for public work, whose claim is not within the class secured by the statutory bond given by the contractor, has no privity with the surety on such bond which entitles him to be subrogated in equity to a security taken by such surety to indemnify it against loss by reason of its suretyship.

4. PRINCIPAL AND SURETY—INDEMNITY TAKEN BY SURETY.
   A surety for a contractor for government work, who took an indemnity agreement from the contractor and another, cannot be prejudiced by any undisclosed relation between the signers of such agreement,

as that they were partners in the contract; and the fact that the surety has been reimbursed for a payment of one claim through the indemnity does not enlarge its liability to other creditors of the contractor, as to whom, in the marshaling of claims, the claim paid must be treated as though the surety had not been reimbursed.

**5. BONDS—MARSHALING OF CLAIMS AGAINST SURETY.**

In marshaling claims against a contractor, as against the surety on his bond, conditioned for the payment of such claims, where the claims exceed in amount the penalty of the bond, the fact that certain of the claims have been purchased by one who has bound himself to indemnify the surety against its liability on the bond does not increase the amount to which other claimants are entitled, and for the purpose of making distribution to them such claims must be treated as still subsisting.

**6. SAME—FORM OF DECREE.**

Giving form of decree for preliminary marshaling and distribution, pending the disposition of claims, over which the court has not obtained jurisdiction.

In Equity.

Henry C. Wilcox and Thomas L. Talbot, for complainant.

Benj. Thompson, for respondents Thos. Laughlin Co. and 83 others.

Libby, Robinson & Turner, for respondent Berlin Mills Co.

Bird & Bradley, for respondents F. N. Temple and A. E. Keizer.

Frank & Larrabee, for respondents Thomas Carlin's Sons.

Payson & Virgin, for respondents Thos. R. Allen and Enos B. Allen.

Wm. H. Looney, for respondent McKiernan Drill Co.

Turner & Connellan, for respondents Snowdell and 8 others.

PUTNAM, Circuit Judge. This is the same cause in which an opinion was passed down on July 17, 1899. 96 Fed. 25. The complainant executed a bond as surety for William Morgan, a contractor with the United States, subject to the provisions of the act approved August 13, 1894 (28 Stat. 278), by virtue of which one condition of the bond was that Morgan should "promptly make payments to all persons supplying him" "labor and materials in the prosecution of the work provided for" in his contract. Morgan failed to make such payments, and failed to complete his contract; and the result is that the demands made on the complainant by the United States, and by the persons who allege that they furnished labor and materials within the provisions of the statute and the bond, exceed the penal sum of the complainant's obligation. The complainant was sued in this district, and also in other circuits, and, expressing itself as willing to pay the penal amount of its obligation, asked the aid of this court, by its bill in equity filed in this cause, in ascertaining to whom payments should be made, and in what amounts. The court, in its previous opinion, concluded to hold the bill, and marshal the claims so far as it was in its power so to do. The bill was held to be ancillary to the suits pending in this court and within this district; but other creditors than those who commenced such suits have been properly allowed to intervene, and have been heard before the master, who was appointed by an interlocutory decree entered in accordance with the previous

opinion. That decree directed the master to determine the nature and amount of the various claims against Morgan for labor performed and materials furnished in the prosecution of his contract, estimating the same, so far as concerned the United States, and so far as the parties had not submitted to the jurisdiction of this court, in such manner as would enable us to make a primary distribution that will not jeopardize the complainant. The master's report has been made, and is now before the court, to be heard on various exceptions, which will be disposed of in this opinion. The report shows that the United States have made a claim, by suit at common law in this court against the complainant, for $11,440.86, which they maintain is protected by the bond in litigation. The United States have not submitted to the jurisdiction of the court in this cause, so that on that account only a primary distribution can be decreed at present. The master's report also shows that, aside from the claim of the United States, there are no claims against the complainant as surety, except of those who are parties to this bill, or who have intervened as already stated.

In using the expression which we have quoted from the statute and the bond, there can be no question that congress had somewhat in mind statutes in various states giving liens on buildings and other property, real and personal, for labor and material. Nevertheless, this statute does not have the same aspect as the ordinary lien statutes referred to, and therefore the latter can afford only very general assistance with reference to the construction of the former. The ordinary lien statutes have been justly and strictly held to cover only what has added to the value of the property against which the lien is asserted, and therefore they are ordinarily administered to protect only what is actually incorporated into its substance. The underlying equity of these statutes requires them to be so limited in their application. Even this underlying equity is not applied with absolute strictness; as, for example, with reference to a bill of lumber sold to one erecting a building, no distinction is made between those portions of it which are actually incorporated into the walls and those portions used in temporary carpenters' stagings necessary to aid in construction. Such statutes commonly use expressions of this character: "Whoever performs labor or furnishes materials in erecting, altering, or repairing a house, building, or appurtenances,"—a form which has direct reference only to the labor or materials and the erection in which they are used; while in the statute under discussion the expression is broader, namely, "in the prosecution of the work." The underlying equity of the lien statutes relates to a direct addition to the substance of the subject-matter of the building, or other thing, to which the lien attaches, while the statute in question concerns every approximate relation of the contractor to that which he has contracted to do. Plainly, the act of congress and the bond in the case at bar are susceptible of a more liberal construction than the lien statutes referred to, and they should receive it. In the one case, as in the other, the dealings of the person who claims the statutory security must approximate the work, and in the one case,

as well as in the other there must be a certain margin within which there will be difficulties in discriminating between what is and what is not protected. Nevertheless, we are not concluded by the decisions with reference to the ordinary state statutory liens. We can apply them only in a general way, and we are not so restricted by them as to require a construction inconsistent with the remedial purposes of the statute now in issue.

Before passing on any of the particular claims which are brought to us by the master's report, we will dispose of the general questions affecting all of them. The master has brought down interest to the date fixed by him for receiving proofs of claims, namely, January 24, 1901. It was necessary that the master should compute interest on all claims to the same specific date, in order to secure that equality among the various claims which our previous opinion pointed out to be a necessary equity as between them. If the claims, with interest to the date computed by the master, exceed the amount for which the complainant is liable on its bond, there will be no occasion for a further computation of interest; but, if the reverse is true, the final decree will direct an additional allowance of interest until the penal sum of the bond is exhausted.

Inasmuch as the case shows that the complainant has at all times been ready to discharge the entire amount of its penal obligation as soon as it could be ascertained to whom it should be paid, it cannot now be held in default, and therefore it will be entitled to be discharged on payment of the principal without interest, unless found in default at some subsequent stage of this suit.

In accordance with our former opinion, the complainant has paid into the registry in this cause an amount equal to the costs in the various actions at law, computed as therein directed; so that the decree to be presently drawn in accordance herewith will provide that the same shall be distributed to the respective plaintiffs in the various suits, except so far as it shall be determined herein that any plaintiff in any of such suits is not entitled to share in any part in the amount due on the complainant's bond. With reference to all other matters of costs, the decree to be presently entered in accordance herewith will provide that the master's fees shall be paid by the complainant, and that no other costs shall be taxed in this cause, and that all the plaintiffs in the various suits at law to which this cause relates shall be enjoined from asking for further costs in those suits, reserving, however, for future decrees, further directions as to costs, provided subsequent events shall justly entitle any party thereto.

The decree to be presently entered will perpetually enjoin the prosecution against the complainant of all suits or counterclaims with reference to any demand, or any part of any demand, which such decree rejects; and the decree thus to be presently entered will also provide that the prosecution of the common-law suits with reference to any demand, or any part of any demand, which such decree allows, shall be perpetually enjoined, provided the complainant makes payment of the primary dividend as therein directed, subject to such modifications thereof as may be required by subsequent events,

either in the final decree or in any subsequent interlocutory decree. Such injunction will also restrain any assertion of such claims in any subsequent litigation, either by suit, counterclaim, or otherwise. Such decree will reserve to each plaintiff the right to dismiss his common-law suit without costs. Of course, the decree to be presently entered will make it clear that the injunction will not be perpetuated unless payment is made by the complainant of all subsequent distributions to be hereafter determined.

Except as herein otherwise stated, the report of the master is confirmed. The underlying principle which has governed him is correct, in that he has discriminated between labor and materials consumed in the work or in connection therewith, and labor and materials made use of in furnishing the so-called contractor's plant, and available not only for this, but for other work. This principle was applied by the circuit court for this district in disposing of the common-law suit of Thomas Laughlin Company against Morgan and this complainant, based on the same claims of that corporation which are brought before us by the master's report, as appears by the opinion of Judge Webb, filed in that suit on September 15, 1900. 111 Fed. ——. That decision is, of course, binding on us in this cause; but, in addition thereto, we approve the principle on which it rested, and which, as we have said, was adopted by the master as the basis of the leading principle of discrimination which he has applied in disposing of the claims covered by his report. The necessity of the application of this principle of discrimination becomes at once apparent when we consider the rule of proportion; otherwise a bond given under the statute with reference to a small contract for dredging might be substantially exhausted in protecting the purchase money of an expensive dredge, bought at the particular time of the dredging in question, but useful for continuous dredging to an indefinite amount under other contracts and at other localities. However, this principle of discrimination is so strongly entrenched in the practical rules properly applicable to the construction of this statute that it needs no further exposition. It has, however, no necessary relation to repairs of an incidental and comparatively inexpensive character, made on the plant during the progress of the work, representing only the ordinary wear and tear or the equivalent thereof. Such repairs, under some circumstances, are within the purview of the statute, and are not always excluded by any rules of construction which we must apply to it. In this particular we think the master has been too strict as to some minor claims.

Also we think the master was too strict with reference to some minor claims for transportation. Clearly, he was right in his illustrative suggestion which led up to his conclusion with reference to claims for trucking and water carriage. As stated by him, the carrier ordinarily has a lien for his freight, which is a sufficient protection to him. Therefore, in cases of transportation by a carrier from distant points, or, indeed, from another port than the port at which the contractor's work is being done, the carrier would not ordinarily be protected by the statutory bond, for two reasons: First, transportation for considerable distances in the regular course, by the

ordinary lines of either steam, sail, or rail, cannot easily be brought within the words of the statute, "supplying labor or materials"; and, second, inasmuch as carriage of that character, especially under an ordinary bill of lading, or its equivalent, creates a well-recognized lien for freight, the equitable rule would apply that a carrier, under such circumstances, cannot give up his cargo, and enforce his claim against a mere surety, after he has so placed himself that the surety cannot be subrogated to the security which the law gave. The first objection, however, does not necessarily apply to truckmen who are moving materials from a place of landing to the exact locality of the work under contract, although the distance may be somewhat considerable, nor to water-borne transportation carried on by the servants of the contractor, or for short distances without the aid of steam or a fully-equipped vessel. The second objection, moreover, must not be carried to an extreme, otherwise it would defeat the practical operation of the statute. Every person selling materials for cash holds a lien for the purchase money until he voluntarily waives it by delivery; and every person engaged in transportation, who is not the mere servant of the owner of the merchandise transported, holds a carrier's lien, even though the carriage is of miscellaneous parcels, over short distances in the immediate locality, and at frequent, irregular intervals. Nevertheless, with reference to each, such liens are not ordinarily insisted on, and it would be an unreasonable construction of the statute to hold that it intended to interfere with the convenience of minor dealings in such methods as the usual practices establish. Therefore, as already stated with reference to either class, to insist on the fact that the lien is waived, and short credit given, would defeat the beneficial purpose of the statute, and the practical ends which it is intended to accomplish.

Applying these principles to the master's report, we first observe that the portion of the claim of Thomas Laughlin Company which he rejected related to fitting out a steam launch, used by Morgan in transporting merchandise for the work contracted for by him; the construction of dump cars, skips, grout tubs, and conveyors, and other matters falling into like classes. So far as the matter has been brought to our attention, the claims of Good Roads Machinery Company, Thomas Carlin's Sons, McKiernan Drill Company, Edwards & Walker Company, E. Corey & Co., W. L. Blake & Co., Berlin Mills Company, Deering, Winslow & Co., J. H. Fickett & Co., and James H. Boyd, so far as rejected by the master, fall into the same classes, and were properly rejected. Applying, however, the rules which we have stated, the master's report, in rejecting the claim of the Portland Company, of $52.77, for sundry repairs to Morgan's plant, and of Henry N. Merrill, of $38.50, for trucking from the regular steamboat landing on the island where the work was done to the precise locality of the work, is reversed, and these claims are allowed. As to the claims of M. H. Dodge, George L. Cleaves, William D. Post, and Alexander Johnson, for water-borne transportation of materials used in the work, such as coal and lumber, to the island where the work was done, and which were rejected by the master, the record does not disclose enough to enable the court

to apply the rules which it has stated with reference to that particular subject-matter, or to determine on which side of the line the claims fall; and therefore the master's report must stand, so far as they are concerned.

The record shows that one Thomas R. Allen, as surety for William Morgan, and jointly with him, executed to the complainant an agreement to indemnify and save harmless the complainant from all loss by reason of the contractor's bond to which this cause relates. It also shows that Allen was assisting Morgan in raising the money necessary to carry out his contract, and that, in consideration therefor, Allen was to receive from Morgan 40 per cent. of the net profits of the undertaking, and that he was secured by Morgan, through mortgages and otherwise, with reference to all the liabilities which he had assumed in Morgan's behalf. Various claimants whose claims were rejected by the master maintain that they are entitled to be subrogated to, and in some way to receive the benefit of, the security which Allen obtained, and of the indemnifying agreement which he executed to the complainant as surety for Morgan, or that in some way there should be a marshaling to their advantage. It is not necessary to point out that such equities cannot, in any event, be availed of without a cross bill, which is lacking here, because there can be neither subrogation nor marshaling where there is no privity; and, the claimants not being in privity with the complainant, their propositions in this respect entirely fail.

This leaves for consideration the claim of $6,646.38, which originally belonged to the Lawrenceville Cement Company, and four other claims, which are presented by Robert M. Hutchinson, assignee. The Lawrenceville Cement Company recovered a judgment against the complainant, which was paid by it, but the complainant was reimbursed by Allen. It is claimed that the agreement between Allen and Morgan, by which Allen was to receive 40 per cent. of the net proceeds of the undertaking, made him a partner with Morgan; and the master has found that he was such partner. The law, however, was carried to such an extreme in the other direction by Meehan v. Valentine, 145 U. S. 611, 12 Sup. Ct. 972, 36 L. Ed. 835, that it is impracticable to confirm that finding.

As the complainant held the indemnifying agreement executed by Allen as surety, it could not be prejudiced by any contract between Allen and Morgan not disclosed on the face of the bond executed by it, nor by the indemnifying agreement. It was not bound to take notice of the undisclosed relations of Morgan and Allen as between themselves, and, even if advised of them, it was entitled to stand, with reference to the reimbursement by it to Allen, in the position most favorable to itself. It is not holden to account to any claimant for anything realized from any indemnifying security which it held, whether in the way of property or personal suretyship. So far as it paid any portion of any claim which it was bound to pay by virtue of its bond to the United States, and has been reimbursed therefor after payment, either by Morgan, or by any surety in his behalf, or by any property which it may have held as security, it stands, so far as other claimants are concerned,

precisely as though it had not been reimbursed. Therefore, with regard to the claim of the Lawrenceville Cement Company, the marshaling in this suit, with reference to all other creditors, is to be exactly the same as though the Lawrenceville Cement Company had not been in any part paid, or as though the American Surety Company had not been reimbursed. In determining, therefore, the pro rata distribution to the claimants who have been unsatisfied, the proper percentage, or the whole, as the case may be, of the claim of the Lawrenceville Cement Company, will be estimated as though still due from the complainant.

With reference to the claims brought forward in the name of Robert M. Hutchinson, it appears that they were acquired by Hutchinson with funds furnished by Allen, and that any sum received on them by Hutchinson would inure directly to the benefit of Allen. They do not stand like the claim of the Lawrenceville Cement Company in all particulars, although they do in some important respects. Allen, having purchased these claims, is estopped from setting them up against the complainant by his execution of the indemnifying bond already referred to. This is by reason of rules so plain that they need not be stated. This, however, does not increase the equities of the other creditors, and they stand the same as though the claims purchased by Allen were still outstanding in the hands of the original holders. These claims have not been extinguished, and any other rule would compel Allen to now reimburse the complainant the full penal amount of its bond, notwithstanding he had acquired these claims, and it would also give the other creditors a larger percentage than they are equitably entitled to. Therefore, in computing the pro rata to be paid them, both the judgment in favor of the Lawrenceville Cement Company and the claims represented by Hutchinson must be taken into consideration so far as they are of the class which the statute contemplates.

The record shows that a judgment was obtained in favor of the Lawrenceville Cement Company against Morgan and the complainant in the circuit court of the United States for the Southern district of New York, after a verdict by a jury rendered in accordance with the instructions of the court. This establishes prima facie the claim as within the statute, though on this point there seems to be no question made. There is nothing in the record, however, to show what were the facts, one way or the other, with reference to the claims brought forward by Hutchinson. The arguments of counsel are at odds as to the nature of these claims; but, undoubtedly, with the assistance of this opinion, the parties can agree into what class each falls, and on the filing of such an agreement the decrees to follow this opinion will be framed accordingly. If no such agreement is filed, the case must be again submitted to the master to determine the matter. The agreement to be thus filed must also compute interest on the claims presented by Hutchinson, and on the judgment in favor of the Lawrenceville Cement Company, and on all claims rejected by the master, but now allowed, all to the date fixed by the master,—that is, January 24, 1901; and this computation must be carried into the various future decrees.

If the claims set up by Hutchinson are sustained, the total amount allowed in accordance with this opinion, with interest to January 24, 1901, will be approximately between $19,000 and $20,000. The claim made by the United States is given at $11,440.86. As it is beyond our power to determine conclusively whether or not this claim will be allowed, and, if yes, whether or not it will have priority over other claims, its entire amount must, for the present, be deducted in making distribution. This will leave for present distribution approximately $6,000, and therefore the decree presently to be entered will provide for a primary dividend of 30 per cent.

As provided in rule 21, the complainant will, on or before September 2, 1901, file a draft decree in accordance with the opinion passed down this day, and the respondents will file corrections thereof on or before September 6, 1901.