a life estate in his dwelling house, No. 77 St. Marks avenue, Brooklyn, to his wife, and, in the event of the death or remarriage of his wife, a life estate in the same property to his adopted daughter, Ella Agnes McManus (now Svenson). In this same article provision is made for the payment of the taxes on the St. Marks avenue property in these words: "I do hereby order and direct that my executors pay the taxes, assessments and repairs on said house so long as it shall be occupied by my wife or adopted daughter." In the fourth article of the will the testator bequeaths to his adopted daughter, already mentioned, the sum of $5,000, to be paid to her as soon after his decease as possible.

The principal questions litigated upon the trial were (1) whether the payment of the taxes, assessments, and repairs on the St. Marks avenue property, as directed by the second article of the will, constituted a specific charge and lien upon the real estate of the testator, and whether a trust for that purpose was imposed upon the executor; and (2) whether the legacy of $5,000 bequeathed to the adopted daughter was a specific charge and lien upon the real estate of the testator. The evidence sustained the finding made by the learned trial judge to the effect that the testator at the time of executing his will knew that his personal property was insufficient to pay the legacies bequeathed in the second and fourth articles of the will. In view of the proof on this subject, we concur in the conclusion expressed in the opinion rendered at Special Term to the effect that the legacies in question are chargeable upon the real estate of the testator; and the reasons which led the learned judge below to reach that result also command our assent. In affirming the judgment, we deem it unnecessary to add anything further to what he has said, except a single observation in regard to the form of the decree. We do not understand that the judgment compels the executors to sell the testator's real estate at present, and without any further proceedings in order to pay the $5,000 legacy to the adopted daughter. It is merely an adjudication that the lands be charged with a specific lien for the benefit of the legatee, and provision is made for subsequent application to the court by any of the parties to the action for further directions to give force and effect to the decree.

Judgment affirmed, with costs.

---

(86 App. Div. 475.)

UNITED STATES ex rel. McALLISTER et al. v. FIDELITY & DEPOSIT CO. OF MARYLAND et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. BUILDING CONTRACT—BOND—LIABILITY OF SURETY—TRANSPORTATION OF MATERIALS.

Act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], provides that the surety on a bond given by a building contractor to the government shall assume an obligation that the contractor pay all persons supplying labor and materials. *Held*, that the surety is not liable for the contract price of a lighter and crew furnished to the contractor, and used by him in transporting materials to the place where the building was being erected.

Appeal from Trial Term, Kings County.

Proceedings by the United States of America, on the relation of James McAllister and others, against the Fidelity & Deposit Company of Maryland, impleaded with Joseph J. Churchyard. Appeal by the defendant Fidelity & Deposit Company from a judgment in favor of plaintiffs and from an order denying a new trial. Reversed.

Argued before JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

James Russell Seley (Gordon M. Buck, on the brief), for appellant. Nelson Zabriskie, for respondents.

WOODWARD, J. In the year 1899 the defendant Churchyard was engaged in several building operations in the vicinity of Newport, R. I., among them being three separate and distinct government contracts. One of these was with the War Department for the construction of a hospital at Ft. Adams; the second was also with the War Department, and was for the construction of a fort at Dutch Island; while a third was with the Navy Department for a marine barracks at Coaster's Harbor Island, and the defendant the Fidelity & Deposit Company of Maryland became the surety for Churchyard upon the latter contract, subject to the provisions of an act of Congress passed August 13, 1894 (chapter 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]), which provides that the surety shall assume an obligation "that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract." The real plaintiffs in this action, James McAllister, James P. McAllister, William McAllister, and Daniel McAllister, were and are copartners doing business as such in the city of New York under the firm name of McAllister Bros., and on or about October 4th they made a proposition to the defendant Churchyard to furnish him a steam lighter, the Columbia, with a crew of six men all told, and coal, water, and necessary supplies, to run from Newport, Fall River, and Providence, for the sum of $1,800 per month. If the boat was used 45 days, it was proposed to charge at the rate of $55 per day, and, if for 60 days, then at the rate of $50 per day. This proposition was accepted in behalf of Churchyard, and on the 6th day of October the boat was put into commission, and was used by Churchyard in transporting lumber and materials to the three government jobs for a period of 37 days, at a total agreed expense of $2,220, on which he has paid $1,750, leaving a balance still due and owing of $470, for which the plaintiffs seek to hold the defendant Fidelity & Deposit Company, in common with Churchyard, liable. Upon the trial the learned justice presiding permitted the jury to find that the Fidelity & Deposit Company were liable for the indebtedness of Churchyard for the hiring of this lighter to the extent that it was used in delivering materials to the work at Coaster's Harbor Island, the evidence tending to show that it was employed about one-half of the time for which the plaintiffs claim, and the jury has found for the plaintiffs.

The question presented by this appeal on behalf of Fidelity & De-

83 N.Y.S.—48

posit Company is whether its obligations as a surety upon the bond
of Churchyard for the construction of marine barracks at Coaster's
Harbor Island extend to the general contract between the plaintiffs
and Churchyard for the use of the former's lighter in connection with
the transportation of lumber and materials to the three works which
Churchyard had under construction at the time. Does the statute,
and the contract made in pursuance of the provisions of the law, con-
template such a liability? The contract of a surety is to be strictly
limited to the provisions of the contract, and we see no reason why
this rule should be enlarged in the case of a surety required by the
statute, which in this case guaranties that the contractor or contract-
ors "shall promptly make payments to all persons supplying him or
them labor and materials in the prosecution of the work provided
for in such contract." The plaintiffs, in furnishing a boat to transport
materials to the works at Coaster's Harbor Island, has not furnished
any material used in the prosecution of the work provided for in the
contract, any more than a common carrier might be said to furnish
materials by transporting them to the point where they were to be
used. Churchyard might have hired the plaintiffs to transport his
materials as freight, and it would hardly have been suggested that
under the statute the plaintiffs would have had a lien for materials
furnished in performing the contract, and we are unable to discover
any reason why they have a stronger claim because Churchyard
chose to hire the means of transportation, and to assume the responsi-
bility of operating the craft. The full purpose of the statute has been
served, it seems to us, when the surety has complied with its plain
provisions as they would be read and understood by the average man,
and this would not reach beyond an obligation to see to it that the
materials used in the structure under contract had been paid for; that
the claims of the materialmen had been liquidated, and the wages of
laborers actually employed upon the work in fitting materials to be
used in the structure or performing labor in and about the premises
had been paid. See Daley v. Legate, 169 Mass. 257, 260, 47 N. E.
1013, and authorities there cited. In other words, the contract of the
surety is that the contractor will not only build the structure, but that
he will pay for the labor and materials used, which would constitute,
under statutes in most of the states, if unpaid, a lien upon the prem-
ises; and his obligation does not extend beyond the obligation which
the contractor assumes in respect to these matters. The mode in
which one party to a bargain shall enable himself to do what he has
agreed to do is no concern of the other party, and is no part of the
contract (Bacon v. Parker, 137 Mass. 309, 311; Pratt v. American
Bell Telephone Co., 141 Mass. 225, 229, 5 N. E. 307, 55 Am. Rep.
465), with the modification above suggested, and which is provided by
the statute, that the mode shall not be such as to leave obligations
against the structure when completed. There is nothing in the record
to show that there was anything to indicate to the defendant the
Fidelity & Deposit Company that it was assuming any obligations in
reference to any collateral contracts of Churchyard which were nec-
essary to enable him to perform his contract, except such as were
specially mentioned, and which referred to the labor and materials

entering into the structure. Churchyard's contract with the government was that he would "provide, furnish, and deliver, at his own risk and expense, at Coaster's Harbor Island, Rhode Island, all the necessary materials, labor, tools, and appliances for the construction and completion, in all respects, of a barracks," etc.; and his bond, on which the Fidelity & Deposit Company became surety, was conditioned that he should "promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in the aforesaid contract," the work being the construction of the barracks. There is no mention in the bond of the contract to deliver, and, the instruments specifying "labor and materials," under well-established rules of construction all other matters are excluded. Broom's Legal Maxims, 505; Aultman & Taylor Co. v. Syme, 163. N. Y. 54 57, 57 N. E. 168, 79 Am. St. Rep. 565; Mayor v. Ray, 19 Wall. 468, 475, 22 L. Ed. 164. It is true that the contract for the hiring of the lighter of the plaintiffs included a crew of six men, but this was incident to the contract of hiring the boat, and they did nothing toward fitting the materials to be used in the work provided by the contract. The plaintiffs furnished labor only in the sense that a common carrier would have furnished the men to operate the train or the vessel in which the transportation was made, and the contract of the surety was to see that those who furnished labor and materials used in the work under contract were paid, and not to protect those who merely brought the materials to the point, and who were in a position to protect themselves under independent contracts. The agreement between the plaintiffs and Churchyard evidently proceeded upon the theory that Churchyard was alone responsible to them, for it provides for payment in advance of $500, with subsequent payments at periods of 10 days, and it makes no mention of the particular work to be done. As a matter of fact, Churchyard used the lighter for transporting materials, machinery, etc., to each of the three government contracts, and no account was kept of the portion of time it was employed upon the Coaster's Harbor Island barracks. He used it generally in performing several contracts. The cargoes were apparently piled on indiscriminately, and delivered at the various points; and it is difficult to understand how the Fidelity & Deposit Company, which had no intimation, so far as the record shows, that this contract for the use of the lighter was to be made, could be held to have contracted to guaranty payment to these plaintiffs under the statute here under review. Assuming, as we must, that the defendants knew the law, could they be deemed to have contemplated this liability, did the law contemplate it? We think not. The scheme of the statute appears to have been to give materialmen and laborers a lien upon the contractor's bondsmen in the same way that under our state statutes liens are imposed upon the premises, and we find no instance in which it has been held that this lien extended to labor performed in transportation, or to the instruments used in conveying the materials to the premises. In Webster v. Real Estate Improvement Co., 140 Mass. 526, 6 N. E. 71, the petitioner sought to establish a lien for hauling lumber and sand to the premises on which the building was constructed. One Killam was the contractor for building the struc-

ture; and the petitioner, under a contract with him, carted the lumber and sand charged in his account. The court, after discussing the conditions under which a lien might attach for labor performed upon materials actually entering into the construction of the building, although done at a different place, say:

"We think this labor of the petitioner does not come within the terms of the statute; that it was not connected with the building of the structure, and that it was too remote to enable him to establish a mechanic's lien therefor. It is difficult to distinguish the claim of the petitioner for a lien from that of the railroad for transporting the lumber, or from that of the teamster who carted it to the railroad, or from the claim of the woodcutter who felled the trees, provided they stood in other respects towards the respondent as does this petitioner."

The reasoning of this case seems to apply to the facts presented upon the record now before us, and we are cited to no controlling authority holding to the contrary. The plaintiffs have neither furnished materials nor labor entering into the subject of the contract between Churchyard and the United States, and the contract of the surety was merely that the wages of laborers and the claims of materialmen for labor and materials entering into the construction of the barracks at Coaster's Harbor Island should be paid. They did not undertake to insure the payment for transportation of materials, either by a common carrier or through the medium of a lighter hired by the contractor to carry on his general business as a contractor; and it was error, calling for a reversal of the judgment, to submit to the jury the question of how much of the time of the lighter was used in delivering materials at Coaster's Harbor Island. The defendant Fidelity & Deposit Company owed no obligation to the plaintiffs under the terms of the bond sued upon, and there was, therefore, no question for the jury to determine. The judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.