CITY TRUST, SAFE DEPOSIT & SURETY CO. OF PHILADELPHIA v. UNITED STATES, to Use of BRYANT et al.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

No. 220.

1. UNITED STATES—BOND OF CONTRACTOR FOR PUBLIC WORK—CONSTRUCTION OF STATUTE.

Act Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], which requires a contractor for government work to give a bond conditioned that he will promptly make payment to all persons supplying "labor and materials in the prosecution of the work provided for in said contract," is broad enough to include within the protection of a bond so conditioned one who supplies coal to the contractor which is used to operate hoisting or pumping engines employed in the work.

2. WRIT OF ERROR—REVIEW OF QUESTIONS OF FACT—EFFECT OF MOTION FOR DIRECTION OF VERDICT.

Where a party asks the direction of a verdict, and one is directed against him, his position is the same as to all controverted facts and all inferable facts as though an adverse verdict had been rendered by the jury.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, §§ 3748, 4024.]

3. UNITED STATES—BOND OF CONTRACTOR FOR PUBLIC WORK—LIABILITY OF SURETY.

The surety on a bond given by a partnership as government contractor for public work, conditioned as required by Act Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], is not released from liability thereon for the claim of one who supplied labor or materials in the prosecution of the work because of the fact that other persons were associated with the firm as partners in carrying out the contract.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment, entered upon a verdict directed by the court, in favor of defendant in error who was plaintiff below. The action was brought upon a bond executed by John J. O'Brien and John C. Sheehan, copartners in business under the firm name of O'Brien & Sheehan, as principals, and the City Trust, etc., Company, as surety, under Act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]. The bond was conditioned for the faithful performance of a contract of O'Brien & Sheehan with the United States for construction of a dry dock at Charlestown, Mass. The condition further provided that the contractors should promptly make payments to all persons supplying labor and materials in the prosecution of the work provided for in the aforesaid contract. In the prosecution of the work O'Brien & Sheehan associated with themselves two other persons, Perkins & McHale, for the purpose of carrying out the contract giving them such an interest in the enterprise as made them partners; the firm name remaining unchanged. Bryant, the plaintiff for whose benefit the action was brought, sold and delivered over

700 tons of coal at Charlestown to the firm, at an agreed price, all of which coal was used by the firm in the locomotives, hoisting engines, and pumping engines owned by said copartnership and employed by it in carrying on the work provided for in the contract for constructing said dry dock. No payments were made on account of this coal prior to the commencement of the action.

W. R. Conklin, for plaintiff in error.

H. A. Heyn, for defendants in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). 1. The defendant trust company contends that the complaint should have been dismissed on the ground that coal is not a material supplied and used in the performance of the work, within the meaning of the act of 1894. Very many authorities are cited, but it will not be necessary to refer particularly to any except such as deal with the federal statute. As was pointed out in American Surety Company v. Laurenceville Cement Co. (C. C.) 110 Fed. 717, the ordinary mechanic's lien statutes of the different states are not all expressed in the same language, and few, if any, of them in as broad terms as is the act of 1894. A common form of expression in these mechanic's lien statutes is:

"Whoever performs labor or furnishes materials in erecting, altering, or repairing a house, building, or appurtenances."

The federal statute provides security to "all persons supplying [the government contractor] labor and materials in the prosecution of the work provided for in such contract." We concur with Judge Putnam in the conclusion (expressed in 110 Fed. 719) that:

"The act of Congress and the bond given under it are susceptible of a more liberal construcion than the lien statutes referred to and they should receive it."

See, to the same effect, U. S. v. National Surety Co., 92 Fed. 549, 34 C. C. A. 526.

But no especially liberal construction is required to bring the materials supplied in this case within the protection of the act. The labor expended by men in wheeling barrows of material from the point of receipt to the place where it is to be used; in working hand pumps to clear an excavation of water; in turning the cranks of a hoisting derrick, so as to raise materials to a proper elevation—all such labor is so manifestly labor in the prosecution of the work that no one could have the hardihood to contend that it is not within the express terms of the statute. If the contractor, whether for purposes of economy or of expedition, elects to do this work by the power of steam, instead of the power of human muscles, it is difficult to understand how it can be logically contended that such power is not supplied in the prosecution of the work, or that the cost of the coal which produces it should not be equally within the protection of the same statute.

There is nothing in the decisions interpreting the act of 1894 which requires the disallowance of such a claim as this. In U. S., for the

Use of Sica, v. Kimpland (C. C.) 93 Fed. 403, Sica had furnished board and lodging to laborers employed on the work. It was held that this was not within the statute. "The contractor's duty," says the court, "as a contractor, and as regards the sureties, was to pay his laborers their wages, and allow them to buy their board and clothing where they would."

In U. S. v. Hyatt, 92 Fed. 442, 34 C. C. A. 445, the court disallowed the claim of a railroad for freight on materials which it transported to the contractor from a point distant 120 miles from the work, saying:

"The labor which Congress intended to protect is evidently labor used directly upon the public work, claims for which would be made by the laborers primarily against the work, thus impeding, possibly, the prosecution of the work and hampering the government officers. Congress could not have intended to include in the term 'labor,' as used in this act, the freight charges of a railroad on materials carried by it. The railroad is abundantly protected by its lien on freight, and Congress did not contemplate that a charge for transportation by a railroad would be made against the work, and certainly not when the carrier was fully secured otherwise."

In American Surety Co. v. Laurenceville Cement Co. (C. C.) 110 Fed. 717, the court approved of a general discrimination "between labor and materials consumed in the work or in connection therewith, and labor and materials made use of in furnishing the so-called contractor's plant, and available not only for this, but for other work"; and it allowed for trucking from the regular steamboat landing on the island where the work was done to the precise locality of the work, and also for sundry small repairs to the plant, but disallowed the cost of fitting out a steam launch, and the construction of dump cars, conveyors, etc., which became part of the plant and survived the work.

In U. S. v. Fidelity & Deposit Co., 86 App. Div. 475, 83 N. Y. Supp. 752, the court disallowed the cost ($1,800 per month) of a steam lighter, with crew, coal, and all supplies, chartered to transport lumber and materials from Newport, Fall River, and Providence to three different localities where the contractor was erecting buildings for the government.

In Standard Oil Co. v. Trust Co., 21 App. D. C. 369, the court disallowed a claim for lubricating oils used in the operation of a dredge. The only ground stated for the conclusion is:

"If the dredge or tools or material of a contractor are not materials in the sense used in the statute, then, for as strong a reason at least, the oil used for their preservation cannot be so considered."

The facts are not quite fully stated. If the oil was really used for the preservation of the machinery, we would fully concur; but, if it was in fact wholly consumed in doing the work which had been contracted for, we do not find this authority persuasive. In that event it would be materials used solely in the actual prosecution of that particular work, and not merely intended to keep a plant, available elsewhere, in good repair.

In U. S. v. City Trust, 23 App. D. C. 153, the same court disallowed a claim for coal furnished for the operation of a dredging machine, upon the authority of the case in 21 App. D. C. 369, saying:

"Both [the oil and the coal] are equally necessary for the operation of the machine, and equally outside of the operation of the statute. Neither one is used or consumed in the performance of the work in the sense of the law."

As above explained we think that the coal is as much used and consumed in the prosecution of the work as would be the labor of men who might be hired to raise the dredge scoops by turning a hand crank, and do not find this opinion persuasive to a different conclusion.

Several cases have been cited by defendant in error, which are referred to generally as the "powder cases." It seems unnecessary to quote from them, since they are all under different statutes from the one presented here. They hold uniformly that dynamite or giant powder used in blasting rock and excavating earth, so as to complete the particular improvement, and which were wholly consumed in the performance of the work, are distinguishable from the engine, boiler, picks, and shovels, which are part of the permanent plant, and, while used in the performance of the work, survive its performance and remain the property of the owner. Schaghticoke Powder Co. v. Greenwich, 183 N. Y. 306, 76 N. E. 153; Giant Powder Co. v. Oregon Pac. R. R. Co. (C. C.) 42 Fed. 470, 8 L. R. A. 700; Rapauno Co. v. Greenfield R. R., 59 Mo. App. 6; Giant Powder Co. v. Flume Co., 78 Cal. 193, 20 Pac. 419; Hercules Powder Co. v. Knoxville R. R. (Tenn.) 83 S. W. 354, 67 L. R. A. 487.

Under a statute of New York, which gave a lien for "all materials used and services rendered in the execution of such contract," the Supreme Court of that state reached the same conclusion as we have as to coal used in driving the engines for excavating the rock and pumping water, saying:

"The coal used entered into the execution of the agreement and formed a part of the value of the work done as much as the labor of the masons or of the men who aided in hoisting the stones into position to make up the wall. The materials need not be a permanent constituent of the structure itself, but must be necessarily incident to the execution of the agreement, to come within the purview of the defendant's contract, and the coal consumed in carrying on the work is of that character." Zipp v. Fidelity & Deposit Co., 73 App. Div. 20, 76 N. Y. Supp. 386.

2. The next assignment of error is that a verdict should have been directed for the defendant on the ground that the surety company was released by some extension of the time of payment without its consent or knowledge. At the close of the trial the court asked whether either side wished to go to the jury on any issue, and whether either contended that there was any question of fact. The plaintiff expressed the opinion that he would rather have the verdict of the jury as to whether there was an extension or whether the defendant company was injured by any extension. Counsel for the defendant, however, insisted that there was no question of fact—only a ques-

tion of law—and that he did not want to go to the jury. Inasmuch as the court thereupon directed a verdict against him, it must be assumed, as to "all controverted facts and all inferable facts," that his position is the same as if an adverse verdict had been rendered by the jury. Smith v. Weston, 159 N. Y. 198, 54 N. E. 38. Counsel for plaintiff in error does not dispute the correctness of this proposition.

The evidence relied upon to make out an extension is most unsatisfactory. The complaint avers that the contract to supply the coal was made "in or about the month of February, 1902." Issue was joined as to this proposition. When the cause came on for trial, in lieu of calling witnesses or offering documents, a written stipulation was read that in or about the month of February, 1902, plaintiff agreed to and did supply to the contractors, at their special instance and request, 761.14 tons of coal at the agreed price and reasonable value of $4 per ton. Subsequently a letter was put in evidence from one C. P. Anderson (a miner's agent and shipper) to the contractors, dated Boston, February 11, 1902, which states:

"This is to confirm a sale made you through Mr. Eggleston, of E. B. Townsend, of the balance of the cargo of the schooner Iona Tunnel, about 775 tons bituminous coal, at $4.00 per gross ton, delivered alongside your lighter. * * * This coal will be billed you by William Bryant of Philadelphia, for whom I am acting as agent."

There is no evidence in the record showing the date at which the coal was delivered, but it would seem from the briefs of both sides that it is assumed to be February 17th. On April 26th the contractors executed a note for part of the purchase price, payable May 20, 1902, and on April 25th, executed another note for the balance of the same, payable June 20, 1902. It may be noted that these dates, May 20th and June 20th, are respectively three and four months after the date of delivery of the coal, including days of grace. Nowhere in the record is there any direct evidence to show what were the terms of the contract as to time of payment, whether cash upon delivery or on some credit, and if so for how long a time. Either there was some express bargain as to this when Anderson and Eggleston closed the negotiation for their respective principals in February, or else there was some well-known mercantile custom or usage governing such kind of coal sales in Boston at that period; but there is no proof of any express bargain, and this court cannot take judicial notice of the customs of the coal trade in Boston in 1902.

Nor, in the absence of direct testimony, is there found in the record any indirect evidence which is helpful to a conclusion. On February 24th Bryant writes to the contractors offering a discount on the bill, "so that we may receive settlement within the next few days," which would seem to indicate that the terms were not "cash on delivery." On the other hand, Bryant, writing to the contractors under date of April 3d, refers to the account as "overdue." The contractors, writing to Bryant on April 26th, state that their understanding was that part was to come due on May 20th and the balance one month later. In an interview between Bryant and McHale (April 25th) the latter says that he told Bryant "the coal had been originally sold on three

and four months' time." There is nothing to show any admission as to the time of payment which may take the place of direct testimony as to the terms of the original agreement in that regard. Since it cannot be determined when the coal was to be paid for under the contract of purchase, it cannot be held that the taking of the notes operated to extend the time of payment. It is not necessary, therefore, to discuss the question, whether in view of the decision of the Supreme Court in U. S. Fidelity, etc., Co. v. Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, an extension of time of payment will operate to relieve the obligors upon a bond given under this statute.

3. We find no merit in the contention that the surety company is not liable for coal sold to O'Brien, Sheehan, Perkins, and Hale, because the obligation of the bond covered payments by the firm of O'Brien & Sheehan to persons supplying labor and materials in the prosecution of the work provided for in the contract with the government. "The practical effect of the statute is to confer a special lien in favor of such persons, and to substitute this bond in the place of the public building upon which that lien is charged. The bond is not, therefore, to be considered as if a special private offer of guaranty by the sureties to particular persons from whom their principal may solicit credit in the procurement of labor and materials, but as the performance of a precedent statutory condition of his contract, intended for the benefit of all persons whomsoever that, relying upon the provisions of the statute, shall have supplied him labor and material in its performance." Marble Co. v. Burgdorf, 13 App. D. C. 506, 519.

The conclusion we have reached as to the contention that there was an extension of time of payment renders it unnecessary to discuss some exceptions as to testimony elicited touching the financial condition of the contractors subsequent to date of sale.

The judgment is affirmed.