Submitted on briefs March 2, reversed and judgment entered April 6, 1920.

## CLATSOP COUNTY *v.* FIDELITY & DEPOSIT CO. OF MARYLAND.

### (189 Pac. 207.)

**Highways—Statute Protecting Persons Supplying Public Contractor Should be Liberally Construed.**

1. A statute enacted to protect persons supplying a contractor performing a public work with labor or materials for any portion of the work provided for should be given a liberal construction in order to carry out the legislative intent.

**Highways—Person Supplying Meats to Subcontractor on Public Work Held a Furnisher of "Labor and Materials" Within Contractor's Bond.**

2. Meats used in a necessary boarding camp for laborers employed on a public highway in a sparsely settled region provided for in a contract secured by bond pursuant to Section 6266, L. O. L., as amended by Laws of 1913, page 59, are included within the terms "labor and materials," and the person furnishing them to a subcontractor protected by the statutory bond.

**Highways—Evidence Held to Show Necessity of Boarding Camps on Public Work Entitling One Supplying Meat to Sue on Contractor's Bond.**

3. In action on bond of contractor for public work given pursuant to Section 6266, L. O. L., as amended by Laws of 1913, page

59, brought by one who furnished meats to a boarding camp for laborers maintained by subcontractor, evidence *held* to support requested finding that it was necessary for prosecution of work that subcontractor maintain boarding camp at each of his construction camps; region being sparsely settled.

From Multnomah: GEORGE W. STAPLETON, Judge.

In Banc.

This is an action instituted by Clatsop County for the use and benefit of Frye & Company, a corporation, engaged in the sale of meat and meat products with its principal office in Seattle, Washington, and one of its branches at Portland, Oregon, against the defendants, who are the original contractor, its surety, and subcontractors, upon a bond guaranteeing the performance of a contract for the construction of a part of the Columbia Highway. The cause was tried by the court without the intervention of a jury.

Upon the trial Frye & Company, the use plaintiff, introduced testimony showing substantially the following facts: In May, 1914, Boyajohn-Arnold Company entered into a contract with Clatsop County to build a portion of Columbia Highway, agreeing to make payment promptly for labor and materials. Pursuant to the requirements of Section 6266, L. O. L., as amended (Laws 1913, p. 59), Boyajohn-Arnold Company, as principal, and Fidelity & Deposit Company of Maryland, as surety, voluntarily gave the required bond to the county, conditioned, among other things, to "pay all laborers, mechanics, subcontractors and materialmen and all persons who shall supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work and all just debts, dues and demands incurred in the performance of such work." Boyajohn-Arnold Company sublet the contract to Peterson & Johnson, copartners, and they

in turn sublet a portion of the contract involving the clearing and grading of a portion of the highway to F. A. Hadley. Hadley fully performed his subcontract. The portion of the highway which Hadley graded ran through an unsettled region remote from any city or boarding place, and extended over a distance of about ten miles. He employed a crew of itinerant men thereon ranging in number from thirty-five to one hundred. Hadley found it essential to establish two boarding camps along the line of the work whereat the men could eat. Except for the presence of his camps the men would have quit the work and could not have been kept together. There was no other place for the men to eat when on the job but at Hadley's camps. Hadley was compelled to establish camps for his laborers, at which he boarded them. It was necessary to board the laborers at the scene of the work in order to retain their services and prosecute the work. Such work cannot be performed in such an unsettled country unless boarding places for the laborers be maintained upon the work. The men paid no cash for their board. Hadley credited each man with wages in an amount large enough to cover the value of the man's labor. In paying the men each man received a check equal to the value of his labor, less the value of his board, which Hadley figured at the rate of thirty cents per meal. For example, if a man's labor had a value of $3 per day he received therefor his board plus a check for $2.10.

Relying upon the protection given it by such bond, Frye & Company, the use plaintiff, sold the meats, the price of which is the subject of this action, to Hadley for use in his boarding camps. All of them were so used. Relator, Frye & Company, has never been paid for the meats, although demand therefor was made

upon each of the defendants and respondents.    Defendant F. A. Hadley was not served with a summons and did not answer.

At the close of plaintiff's case in chief respondents moved for a judgment.    The motion was granted, and judgment rendered accordingly, from which plaintiff appeals.    The defendants introduced no testimony.    Therefore there is no controversy in regard to the facts.

The trial court found, in addition to the formal findings as to the corporate character of some of the parties, the partnership of Peterson & Johnson, the execution of the contract and bond, the description of the highway and the furnishing of the supplies of meat by the use plaintiff to subcontractor Hadley, substantially in accordance with the above statement, finding No. 10 being worded as follows:

"That the said meats so furnished to said defendant F. A. Hadley were used and consumed by him in a boarding-house maintained and operated by said defendant F. A. Hadley, along the line of said work for the convenience of said men, and whereat a portion of the men employed by said F. A. Hadley on the work performed by him on said Columbia Highway took their meals; that said men so employed on said work were paid by the said F. A. Hadley wages for the labor performed by them at the rate of $2.25 to $3.50 per day for each day said men were actually employed on said work, in full payment for their services, and the said F. A. Hadley charged each man so employed on said work at the rate of thirty cents per meal for each meal consumed by him at said boarding-house, and at the time of the payment of the wages earned by said men, as aforesaid, the said F. A. Hadley deducted from the amount of the check given in payment for such labor, the amount due to said F. A. Hadley for the meals so furnished by him to his said employees."

As a conclusion of law the trial court found *inter alia* as follows:

"That the said meats so furnished by the said relator to the said F. A. Hadley did not come within the provisions of the contract referred to in the findings of fact or the provisions of Section 6266, Lord's Oregon Laws, as amended by Chapter 27 of the Laws of Oregon of 1913, inasmuch as they did not, nor do they, constitute labor or material for the prosecution of the work provided for in the contract."

REVERSED.   JUDGMENT RENDERED.

For appellant there was a brief submitted over the names of *Messrs. Teal, Minor & Winfree* and *Mr. Thaddeus W. Veness.*

For respondents there was a brief prepared and submitted by *Mr. Palmer L. Fales, Mr. Malcolm H. Clark, Mr. Bert W. Henry* and *Mr. Harrison Allen.*

BEAN, J.—It is the contention of the plaintiff that food used in a necessary boarding-house for laborers employed in the prosecution of public work provided for in a contract secured by a bond given pursuant to Section 6266, L. O. L., as amended, is included within the terms "labor and materials," and protected by the statutory bond.

It appears that upon the trial of the case the theory of the respondents was to the contrary.   There is some contention upon the part of the respondents that the trial court did not find that the board of the men engaged in the labor was necessary "for any prosecution of the work."   We do not so understand the findings.   In any event, the undisputed testimony in the case is that the board of the men furnished by the subcontractor near the work was absolutely necessary

in order to retain the laborers and obtain their assist-ance in the prosecution of the work.

1. Section 6266, L. O. L. as amended, was enacted to protect all persons supplying a contractor performing public work, labor or materials for any prosecution of the work provided for in the contract. The law was intended for the benefit of the individual assisting in the furtherance of the undertaking, and also for the benefit of the public. It should be given a liberal con-struction in order to carry out the legislative intent: *School Dist. No. 30* v. *Alameda Const. Co.,* 87 Or. 132 (169 Pac. 507, 788); *Columbia County* v. *Consolidated Const. Co.,* 83 Or. 251, 260, 268 (163 Pac. 438); *Mult-nomah Co.* v. *United States Fidelity & Guaranty Co.,* 87 Or. 198, 207 (170 Pac. 525, L. R. A. 1918C, 685); *Philadelphia* v. *Stewart,* 195 Pa. St. 309 (45 Atl. 1056).

2. Our statute is practically a counterpart of the federal act of August 13, 1894, from which it was de-rived. Since this case was tried in the Circuit Court, a parallel case has been determined by the Supreme Court of the United States: *Brogan* v. *National Surety Co.,* 246 U. S. 257 (62 L. Ed. 703, L. R. A. 1918D, 776, 38 Sup. Ct. Rep. 250). The facts in that case were these: The Standard Contracting Company undertook to deepen the channel of St. Mary's River, Michigan, located "in a comparative wilderness at some distance from any settlement. There were no hotels or board-ing-houses," and the contractor "was compelled to provide board and lodging for its laborers." Groceries and provisions of the value of $4,613.87 furnished it by Brogan were used by the contractor in its boarding-house, and were supplied "in the prosecu-tion of the work provided for in the contract and the bond upon which the suit is based. They were neces-sary to and wholly consumed in such work." The

number of men employed averaged eighty. They were "boarded" by the contractor under an arrangement by which the contractor was to board them and deduct therefor $22.50 per month from their wages. The contract and the bond executed by the National Surety Company bound the contractor to "make full payment to all persons supplying him with labor or materials in the prosecution of the work provided for in" the contract.

It was held that groceries and provisions furnished the contractor, and so consumed by the laborers, were materials used "in the prosecution" of the work within the meaning of the federal act and the bond given to secure the contract.

Without taking into consideration the extra statutory words contained in the bond in suit in the present case, those things which are necessary in the prosecution of the work provided for in the contract are protected as "labor and materials," although such supplies are not physically incorporated into the work. Such materials are embraced within the provisions of Section 6266, L. O. L. as amended, and are included in the bond given pursuant thereto: *Brogan* v. *National Surety Co.*, 246 U. S. 257 (62 L. Ed. 703, L. R. A. 1918D, 776, 38 Sup. Ct. Rep. 250); *Portland* v. *New England Casualty Co.*, 78 Or. 195, 201, 202 (152 Pac. 253); *Baker City Mercantile Co.* v. *Idaho Cement Pipe Co.*, 67 Or. 372, 377, 379 (136 Pac. 23); *Illinois Surety Co.* v. *John Davis Co.*, 244 U. S. 376 (61 L. Ed. 1206, 37 Sup. Ct. Rep. 614); *Title Guaranty & Trust Co.* v. *Puget Sound Engineering Works*, 163 Fed. 168, 178, 179 (89 C. C. A. 618); *City Trust, Safe Deposit & Surety Co.* v. *United States to Use of Bryant*, 147 Fed. 155, 158 (77 C. C. A. 397); *United States for the Use of Standard Furniture Co.* v. *Aetna Indemnity Co.*, 40

Wash. 87, 91, 92 (82 Pac. 172); *Pittsburg Coal Co.* v. *Southern Asphalt & Construction Co.*, 138 Tenn. 154 (196 S. W. 490, 491); *City of Pendleton* v. *Jeffery & Bufton*, 95 Or. 447 (188 Pac. 176).

Our statute is fully as broad as the federal act. If there is any difference, the Oregon act is garnished with the stronger words where provision is made for security for the payment of "labor or materials for *any* prosecution of the work provided for in such contracts."

*Hess & Skinner Eng. Co.* v. *Turney* (Tex. Civ. App.), 207 S. W. 171, was an act on a contractor's bond required by a statute like ours. The syllabus reads thus:

"Where a contractor, in constructing a bridge, in order to facilitate work, had laborers take their meals in camp instead of going into town for them, the labor in cooking such meals was labor performed in the prosecution of the work, and for such the contractor's surety would be liable."

It is stated in the opinion at page 175 of 207 S. W.:

"Food was essential to the laborers, and it was necessary that it be cooked. It facilitated the work to have laborers take their meals in the camp, instead of going to town for them."

In *Pacific Wood & Coal Co.* v. *Oswald*, 179 Cal. 712 (178 Pac. 854), it was held that items furnished a subcontractor, consisting of hay and feed for horses and mules used in doing road work, are covered by a bond requiring a public contractor under such a statute to pay for materials furnished for or in doing the work, irrespective of the presence or absence of the word "supplies." The opinion was to the same effect in the case of *United States* v. *Lowrance*, 252 Fed. 122 (164 C. C. A. 234). It is there stated:

"The act of Congress and the surety bonds given according to its provisions should be liberally, not narrowly, construed. The typical lien laws of the states and the decisions of the courts upon them should, for the most part, be put aside."

The following have been held nominated in such a bond: Trucking from a steamer landing on an island where the work was to be done to the particular locality of the work: *American Surety Co.* v. *Lawrenceville Cement Co.* (C. C.), 110 Fed. 717; coal supplied to a contractor and used to operate hoisting and pumping engines employed in the performance of a contract for the construction of a drydock: *City etc. Trust Co.* v. *United States,* 147 Fed. 155 (77 C. C. A. 397); drawings and patterns made for the contractor constructing a steam vessel for the United States, from which to make molds and castings; also towing in the delivery of materials, wharfage paid in connection with such delivery, and the local transfer or hauling of materials: *Title Guaranty & Trust Co.* v. *Crane Co.,* 219 U. S. 24 (55 L. Ed. 72, 31 Sup. Ct. Rep. 140); use of equipment in the erection of a naval training station: *United States* v. *Illinois Surety Co.,* 226 Fed. 653 (141 C. C. A. 409).

In the instant case F. A. Hadley, the subcontractor, testified in part as follows:

"A. I had about between eight and nine miles of work on the Columbia Highway, subcontracted or as a station man.

"Q. Now, what were your duties by way of that subcontract with Peterson and Johnson?

"A. To grade a certain portion of the Columbia Highway.

"Q. Now, how many men did you employ on the average on the work there?

"A. I couldn't say as to how many, my payroll would show, I suppose all the way from thirty-five to as high as one hundred.

"Mr. Veness: How did you provide for the feeding of the men?

"A. With a boarding camp.

"Q. What is the necessity of a boarding camp around camps of that kind?

"A. Well, I don't know how you would keep a bunch of men together out there in the woods unless you run a boarding-house to feed them or to hold them there. * * "

The court remarked:

"But the mere incident of the running of the boarding-house where the men are bound to lose more or less time by reason of inclement weather or other conditions, the boarding-house goes on just the same, the crew is kept together just the same, is kept together for the purpose of carrying out that contract, and they have to be fed while they are kept together, and even though he charged them for their board at that time and didn't pay their wages, it would be the board of the men and a part of that work, as the furnishing of supplies is a part of that work. I am not passing on that yet, but as far as keeping the establishment open, that is one of the essentials of the business."

Witness Hadley further stated, in effect, that the meat supplied by Frye & Company to him was all used in boarding the men; that there was no other known place for them to eat; that occasionally one of the engineers on about twenty-eight miles of the road who boarded at Astoria, four and one-half miles away from Hadley's camp, and usually brought their lunch, would come in and get a meal and no charge was made therefor; and that one of the employees had a visitor for about two days.

The fact that a small courtesy was shown to an occasional guest in a sparsely settled civilized section of

the country we deem of no importance, although much is attempted to be made thereof in defendants' brief.

3. Plaintiff requested the court to find, among other things:

"That it was necessary for the prosecution of the work in question that said Hadley maintain a boarding camp at each of his construction camps, in order that the laborers could have a place convenient to said work to be fed, and except for the maintenance of such boarding camps, said Hadley would have been unable to keep said laborers together and at work upon said job; each of said construction camps being necessarily a long distance from any place where board could be secured by said laborers."

Error is assigned upon the refusal of the court to find as requested. The uncontradicted testimony supports the requested finding, and, if the finding made was not intended to be to the same effect, we think the substance of the request should have been embraced in the portrayal of facts. There is no evidence in the case supporting any different finding in this respect.

The meat furnished by the use plaintiff for food for the laborers, under the circumstances of the case, was absolutely necessary in any prosecution of the work provided for in the contract. It was supplied upon the faith and credit of the bond sued on, and is protected thereby. It facilitated the work to have the laborers take their meals in camp near the construction, instead of traveling a long distance for them. The camp arrangement was practically the only way the work could have been successfully prosecuted.

We suppose it would be conceded that if the act under consideration enumerated "supplies, labor, or materials," that meat so furnished workmen would be protected by the statute. If the statute read, "all persons supplying * * supplies, labor or materials"

the word "supplies" would practically be a repetition and would not add to the force of the law. For good measure we quote from the note in 27 L. R. A. (N. S.) at page 601:

"The courts that have construed contractor's bonds to public or *quasi*-public corporations and officers, conditioned upon the payment of laborers and materialmen, as valid contracts, both of indemnity to the nominal obligees and guaranties to the unnamed beneficiaries, upon which the latter can recover, when taken without explicit and direct authority from any statute—and they greatly outnumber the tribunals which hold the opposite view—are by no means united upon the grounds of their conclusions. Some hold that the power to take such a bond is an incident to the power to construct the public work by contract, and that statutory authority for the latter is, by implication, statutory authority for the former. Others hold statutory authority unnecessary, and the bond a common-law obligation, voluntarily executed, such as any obligee may take, and the taking of which is warranted upon broad grounds of public policy. It is not at all necessary to decide upon the merits of these respective theories; suffice it to say that the weight of authority appears to be that when the language of a bond is sufficiently precise and full to create an explicit obligation to pay laborers and materialmen, then, for either the one or the other reason, it is valid, and enforceable at the suit of the beneficiaries."

The same principle is announced in several Oregon precedents: See *The Home* v. *Selling,* 91 Or. 428, 435 (179 Pac. 261), and cases there cited. See, also, 13 C. J. 705, Section 815, where a wealth of authorities are cited; annotation, L. R. A. 1917B, 1015.

The trial court erred in its conclusion of law to the effect that the meats furnished by Frye & Company did not come within the provisions of Section 6266, L. O. L., as amended by Chapter 27 of the Laws of 1913,

and that the plaintiff was not entitled to recover from any of the defendants except F. A. Hadley. The judgment of the lower court will therefore be reversed.

The whole of the testimony in the case is contained in the record, which is complete. From the findings of fact made by the trial court, taken in the light of the undisputed testimony, the plaintiff is entitled to a judgment against the respondents as prayed for in the complaint, which will be entered: Article VII, Section 3, Constitution of Oregon.

Reversed.    Judgment Rendered.