UNITED STATES ex rel. GIANT POWDER CO. v. AXMAN et al.

(Circuit Court, N. D. California. September 6, 1906.)

1. UNITED STATES—CONTRACTS—SUBCONTRACT—AGENCY.

Where, after defendant A. had obtained a contract from the government for the removal of certain rocks from San Francisco Bay, he organized defendant corporation, of which he was president and the owner of a majority of the stock, and contracted with such corporation, in consideration of a block of the stock, to employ it as his agent in the performance of such contract, the corporation agreeing to carry out the contract and specifications and to have full control of the work and all employés working thereon, etc., the corporation was neither an assignee of the contract nor a subcontractor, but a mere agent for A.

2. COURTS—FEDERAL COURTS—JURISDICTION—CASES ARISING UNDER UNITED STATES LAWS.

An action by the United States on relation of a materialman against a government contractor and a surety to recover on the contractor's bond to the government, as required by Act Cong. August 13. 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], for materials furnished to enable him to perform the contract, constituted a case arising under the Consti-

tution or laws of the United States, and was therefore within the jurisdiction of the federal courts, as provided by Act Cong. March 3, 1875, as amended by Act March 3, 1887, and corrected by Act August 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508].

[Ed. Note.—Jurisdiction in cases involving federal question, see note to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purch. Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.]

**3. LIMITATION OF ACTIONS—APPLICATION OF STATUTE—TIME.**

Where a materialman delivered materials to a government contractor for use in the performance of the contract in California, the materialman's right to recover on the contractor's bond to the government was barred by the California statute, limiting actions on accounts to two years, and was not within the four-year statute relating to actions on written contracts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 136, 137.]

**4. SAME—ACKNOWLEDGMENT OF DEBT.**

Where a contractor executed his note to a materialman for $5,000, such note constituted an acknowledgment of indebtedness to that amount within the statute of limitations as of the date the note was given.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 591–602.]

J. F. Cowdery and Robert Harrison, for plaintiff.
Charles A. Shurtleff and Lawler, Allen & Van Dyke, for defendant.

MORROW, Circuit Judge (orally). I shall decide this morning the cases of the United States on the relation of the Giant Powder Company, and also the United States upon the relation of W. W. Montague & Co., against Rudolf Axman and American Surety Company.

I have not had an opportunity to write an opinion in either of these cases, and what I shall say will be a brief reference to the points involved in the cases. Counsel will recall the fact that evidence was introduced, over the objection of counsel on both sides, and admitted provisionally, with the understanding that when the court came to render its final decision it would be deemed to have ruled on these objections, overruling objections to such evidence as the opinion would indicate the court had accepted, and sustaining objections to such evidence as the court rejects. It will therefore be noted that the court rules now upon these various objections to the evidence, and so states, and exceptions may be deemed to have been entered to such ruling by respective counsel.

The first case I will take up will be the case of the United States on relation of the Giant Powder Company against Rudolf Axman and the American Surety Company of New York, No. 13,441. This case was commenced July 18, 1903, to recover the sum of $16,286 for material supplied to the defendant Axman, who had a contract with the government, dated September 14, 1899, for the removal of certain rocks in the Bay of San Francisco, known as Arch Rock and Shag Rocks, Nos. 1 and 2. The contract for this work was to remove these rocks to a depth of 30 feet at low water, and the contract price for removing these rocks was $253,000.

152 F.—52

The act of Congress approved August 13, 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], requires that a contractor for the construction of any public building, or the prosecution and completion of any public work, shall, before commencing such work, execute the usual penal bond with good and sufficient sureties, and the additional obligation that such contractor shall promptly make payment to all persons supplying him labor and material in the prosecution of the work provided for in the contract. In this case the defendant Axman, on September 14, 1899, executed such a bond in the penal sum of $100,000, with the American Surety Company as his surety. This suit is now brought upon this bond.

It appears from the evidence that on October 19, 1899, the defendant Axman organized the Coast Contracting Company, a corporation which was incorporated October 23, 1899, with Axman as its president, and his associates with him as directors and stockholders, and he the owner of the majority of stock and the president of the corporation; that, immediately after the incorporation of this Coast Contracting Company, Axman, as party of the first part, and the Coast Contracting Company, as the party of the second part, entered into the following agreement:

"Memorandum of Agreement, made and entered into this first day of November, A. D. 1899, by and between Rudolf Axman, of the city and county of San Francisco, state of California, party of the first part, and the Coast Contracting Company, a corporation organized and doing business under and by virtue of the laws of the state of California, party of the second part, witnesseth:

"That, whereas, the said Rudolf Axman has entered into a contract with the government of the United States, through its proper officers, for the removal of Arch Rock and Shag Rocks, numbered one and two, in the San Francisco Harbor, California, and is to furnish all necessary labor and material and remove the rocks as specified in the specifications issued by the United States engineer's office, dated June 7th, 1899, for the sum of $253,500.00;

"And whereas, the said party of the second part is desirous of acting as the agent of the party of the first part in carrying out the said contract and in furnishing the necessary labor and material in connection with said contract and acting as superintendent thereof, but not in any way as the assignee of said contract or as having any interest therein, but solely for the purpose of employment under said party of the first part in the work of removing the said rocks as aforesaid.

"Now, therefore, this agreement witnesseth that the said party of the second part in consideration of the premises and of the agreement on the part of the party of the first part, hereinafter contained, to employ the party of the second part as the agent and representative of the party of the first part in carrying out the contract between the party of the first part and the government of the United States as aforesaid, agrees to issue to the said party of the first part five hundred (500) shares of its capital stock, fully paid up.

"And the said party of the first part in consideration of the issuance to him of the said five hundred shares of the said capital stock of the party of the second part as aforesaid, agrees to institute, appoint and employ the said party of the second part as his agent and employee irrevocably in the removal of the said Arch Rock and Shag Rocks, numbered one and two, in San Francisco Harbor, California, and to carry out all the terms of the contract entered into between the party of the first part and the said government of the United States as hereinbefore referred to; the said party of the second part to do all things necessary to carry out the said contract and to furnish all necessary labor and material and remove the said rocks and within the time as specified in said contract and specifications aforesaid.

"And for the services of the said party of the second part in that behalf the said party of the first part agrees to pay to the said party of the second

part the full sum of $253,500.00, as the same shall be received by the party of the first part from the government of the United States for the work aforesaid, according to the terms of the contract aforesaid.

"It is further agreed between the parties hereto that the party of the second part shall in carrying out the contract and specifications aforesaid have full control of said work and of the direction thereof, and of all employees employed by it on the work thereof according to the terms of said contract.

"And it is further covenanted and agreed that said party of the first part shall appoint the treasurer of the said party of the second part his agent for the purpose of receiving from the government of the United States, in the name of the party of the first part, all monies due upon the contract aforesaid, and that said treasurer shall act as the agent and representative of the party of the first part in reference to all transactions between the party of the first part and the government of the United States in reference to the contract aforesaid."

It will be observed that by this contract the Coast Contracting Company became the agent of Axman in the execution of the contract. Under the agency created by this contract, the plaintiff, in this case the Giant Powder Company, delivered to the Coast Contracting Company material commencing January 8, 1900, and terminating March 24, 1903. The total amount of this material delivered during the four years was $30,340.02. During this time there was paid on this account the sum of $14,064.36, excluding a promissory note executed on December 15, 1902, for the sum of $5,000. The balance was $16,-275.66, and that is the amount sued for. I call the attention of counsel now to some discrepancy in the complaint and account with respect to the amount sued for. The amount I find is $16,275.66, and the amount in the complaint is $16,286, a difference of a few dollars. In preparing the findings it will be necessary to verify this to see which is the correct amount. As I say, that left, deducting the $5,000 note, $16,275.66. This suit is brought against Axman and the American Surety Company to recover this balance.

The first objection that is made to this action is one with reference to the jurisdiction. It is objected on the part of the defendants that this court has no jurisdiction of this case, and the following cases are cited in support of this objection: U. S. ex rel., etc., v. Henderlong (C. C.) 102 Fed. 2; U. S. ex rel., etc., v. Sheridan (C. C.) 119 Fed. 236; U. S. ex rel., etc., Maxwell v. Barrett (C. C.) 135 Fed 189. These cases hold that the United States is not the real plaintiff in such a case; that the real plaintiff is the person for whose benefit the suit is brought, which in this case would be the Giant Powder Company. The Giant Powder Company was incorporated in this state, and under the law is a citizen of this state and so is the defendant Axman, and as the two parties are citizens of this state there is no such diversity of citizenship as entitles the plaintiff to bring this suit in this court. I think, however, the jurisdiction of this court in this case is to be looked for in another provision of the statute, and that it will be found under that provision of the statutes of March 3, 1875, as amended by the act of March 3, 1887, and corrected by the act of August 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], which provides that the Circuit Court has jurisdiction of cases arising under the Constitution or laws of the United States. In this case, the bond in suit is authorized by the act

of August 13, 1894. It was an act that was passed not only in the interest of the United States, but in the interest of materialmen who should supply the material for public buildings and other public work. It was a matter in which the United States was moved to act not only in the interest of the government, but for the protection and in the interest of those who should supply material to contractors for the government. I think in every state in the Union there is some provision made by statute for securing the materialmen on building contracts. Now, the plaintiff, of course, would have no security on such a contract unless it is upon the bond under this statute. The original bond that was provided for the security of the United States alone was one that had been required probably during the entire existence of this government, but this act of 1894 added to this provision the obligation and liabilities with respect to the supply of material and labor, etc. It was in the interest of the government to have such a provision in the law with respect to work of that character, and it was to its interests to protect laboringmen and those who supplied the material. There are cases, it is true, where the courts have held that this court does not have jurisdiction under a statute of the United States where the questions involved are of a general or local character, as, for instance, a controversy between claimants to mining lands, where the title is acquired under the laws of the United States. It has been held that such a statute does not give the Circuit Court jurisdiction. But that is a very different statute from the one now under consideration. The controversy under the mining statute is between parties with respect to a matter in which the United States has no interest whatever, and the questions are of a general local nature. The land of the United States is open to people of the United States for exploration and occupation, and where controversies arise between locators it is provided that such controversies must be determined by a court of competent jurisdiction. Other statutes might be referred to which contemplate proceedings in court without conferring jurisdiction upon courts of the United States. But the present statute confers rights which are special and dependent upon the law itself. It is a law of the United States under which this suit was brought, under which it is maintained, under which judgment is to be entered—there cannot be a judgment entered in the case in favor of persons supplying the material and labor except upon this statute. I therefore hold the jurisdiction in this case is to be sustained as a suit arising under a law of the United States.

The next defense is that this material was delivered not to Axman, but to the Coast Contracting Company, and therefore the defendant American Surety Company is not liable in this action; that the American Surety Company is only responsible upon this bond for the material delivered to Rudolf Axman. Now, what was the relation of Rudolf Axman to this contract? He was the original contractor with the government, but he did what is done in any number of cases, and in nearly every case of this kind, he appointed an agent. He had a right to employ an agent to act for him. It would be in most of these government contract cases impossible for a contractor to supply all the work and furnish all the material, to perform all the duties and

obligations of the contract, without the assistance of an agent. He has to have somebody to act for him in much of the business relating to the contract. In this case Axman employed the Coast Contracting Company to act as his agent in carrying out the terms of the contract. The point is made that there was a transfer of the contract to the Coast Contracting Company, and that under section 3737 of the Revised Statutes [U. S. Comp. St. 1901, p. 2507] the transfer was void; and under another provision of law—section 3477 [U. S. Comp. St. 1901, p. 2320], I believe—all transfers and assignments of contracts are void under the law of the United States. This was not a transfer of a contract, nor an assignment of a contract. As I read the evidence in this case, and as I read this document, it was, as I said a moment ago, the appointment of the Coast Contracting Company as the agent of Axman to carry out this contract in every particular, and to receive money from the United States to pay these claims. I am of the opinion that Axman is the responsible person in this case, and that the Coast Contracting Company is also a responsible party in this case, but only as the agent of Axman. That is to say, that the Coast Contracting Company acted as the agent of Axman. It represented him in all these transactions with the materialmen. I therefore hold that the delivery of this material to the Coast Contracting Company, and the charge against that company, was the delivery and charge of material to Axman.

A further defense is that the Coast Contracting Company was a subcontractor, and that, therefore, the American Surety Company is not liable. This defense is answered by what has already been stated.

The next question that is raised by the defense is as to the statute of limitations. It is contended on behalf of the defendant that the statute of limitations has run with respect to these accounts. On behalf of the complainant it is claimed that this suit is brought upon this bond, upon this written contract, and that the statute of limitations applicable to the contract is a period of four years provided for under the laws of the state of California. If we accept that as being the law applicable to this case, then, of course, the statute of limitations has not run, and a liability existed when this suit was commenced for all of the amounts involved in this account. On the other hand, as I said before, it is contended on behalf of the defendant that this suit is brought on this account, and that the breach alleged in the complaint, and the one that has been proven, is a failure to pay for materials supplied, as shown by the account. A breach of the bond is therefore specifically a failure on the part of Axman or the Coast Contracting Company, as the agent of Axman, to pay for these materials as charged in this account. Now, as I construe this transaction, I think the statute of limitations of this state with respect to accounts as construed by the Supreme Court of the state is the statute that is applicable to this case. It is a question that has been discussed and numerous authorities cited in these briefs. I have not had the time to examine the question thoroughly in all the states, but the court is informed by the brief on behalf of the plaintiff that the only states that construe a suit of this kind as being a suit upon account and not upon the bond are the states of Kansas, Washington, and California. My own impres-

sion is that there are other states where this construction of the law has been followed. However, it is sufficient to say that it is admitted that this state has declared the law adverse to the position of the plaintiff. In the case of County of Sonoma v. Hall, 132 Cal. 589, 62 Pac. 257, 312, 65 Pac. 12, 459, it was held that the liability of a county recorder for failure to pay to the county the fees required by law to be collected and paid over by him was a liability created by statute which was barred as to the recorder in three years after the breach of his official duty, and not in four years, as a liability upon a written contract. The case of Aldrich v. McClaine, 106 Fed. 791, 45 C. C. A. 631, has been referred to as declaring a doctrine applicable to this case. I am familiar with that case. I wrote the decision in the Circuit Court of Appeals. It was held in that case that the liability was not only upon a statute of the United States, but also upon a written contract; a suit upon contract because the persons who subscribed for this stock had subscribed, and had agreed to take the stock subject to the terms prescribed by law, and that having taken the stock, and accepted it by the terms of agreement in subscribing for the stock, the stockholder had become responsible in a contractual way. So that the Circuit Court of Appeals held that the case was one which arose not only under the statute, but also under a contract, and that the statute of limitations, while it had run with respect to the liability under the statute, had not run upon the written contract. The case was taken to the Supreme Court of the United States, and by a divided court it was held that the liability was statutory and not contractual. McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct. 410, 49 L. Ed. 702. The court held that the statute of limitations of the state, as construed by the courts of the state, was applicable to the case. I shall therefore base this decision upon the law of this state, and hold that the statute of limitations of this state, as construed in the case of County of Sonoma v. Hall, supra, is applicable. Under this law the liability ceased after a period of two years.

There is a question when the statute of limitations began to run with respect to these items in this account. This suit was brought July 18, 1903, and, as I construe this statute, evidence would only be admissible to prove the delivery of material within two years; that is to say, between July 18, 1901, and July 18, 1903. But it is said with respect to this account that the items here charged were delivered upon 60 days' credit, and that, therefore, that would extend the statute back a period of 60 days. It would cover not only all the material that was delivered within 2 years, but also all material that was delivered within 2 years and 60 days; but upon an examination of this account and the bills that were rendered, I do not find that there are any bills providing for a 60-day credit with respect to the items 60 days prior to July 18, 1901. There are three items—June 8, 1901, for the delivery of goods and material amounting to $998.80; July 5, 1901, material, $998.60; and July 11, 1901, material, $1,231. These are the only items that are within 60 days. The items before that would be May 10th, beyond the statute. Those bills do not contain any provision about 60 days' credit. Some others do, but they do not. So I construe this account as running from the items commencing July 18, 1901, down to March 24, 1903.

There is another question to be considered. On December 5, 1902, Axman and the Coast Contracting Company gave to the Giant Powder Company a note for the sum of $5,000. It is contended on the part of the plaintiff that this note is evidence that on the date, December 15, 1902, Axman, and the Coast Contracting Company as his agent, he being responsible for it, was indebted to the Giant Powder Company upon this account in the sum of $5,000. If I understand Mr. Harrison, he claims that is evidence. Assuming now that the suit is upon the liability stated in the account, nevertheless here is a written statement to the effect that upon that date there was owing on this account the sum of $5,000. If that is accepted as evidence, and that it is such evidence as may be taken to bring within the statute of limitations the amount of this account, then, of course, the statute of limitations extends the account back so as to cover $5,000 prior to July 18, 1901.

There is still another matter involved in this suit. The Giant Powder Company, when it entered into this agreement, gave to the American Surety Company its certified check for $5,000. That check was to be an indemnity to the American Surety Company for whatever loss it might sustain by reason of the American Surety Company having become surety for the Giant Powder Company. The defendant American Surety Company has pleaded this check as a set-off. I shall allow it as a set-off, but not for $5,000, because the only evidence that there is in the case of liability on the part of the surety company is the liability for this particular account, and the liability in the Montague case.

The American Surety Company admit that they have also received indemnity to the amount of $50,000 from other sources. What the other sources were, the court has not been informed. They have been indemnified to the amount of $50,000, and this $5,000 is in addition to that $50,000. They have then as an indemnity $55,000 to pay any loss that it may sustain. It is therefore plain that the surety company is not entitled to claim the amount of the entire $5,000 note as indemnity for the loss sustained with respect to this particular suit. The loss will be shared pro rata on this note of $5,000. It will only have to suffer a deduction for such pro rata as it sustains by reason of its relation to the other indemnity of $50,000. It will only have to sustain its proportion of that loss. I shall leave that matter without further statement, except that if the evidence is here sufficient to indicate the pro rata, then I will allow this set-off to the amount stated. Mr. Harrison says he doubts whether this court has such jurisdiction in equity, but under the law of this state, under the common law of practice, there can be a set-off, and that may be admitted; but the only trouble that I can see is to determine the pro rata. If that can be determined upon the evidence before the court, I do not see any reason why this set-off pro rata shall not be allowed.

Plaintiff's counsel will prepare findings of fact in accordance with this opinion, and judgment will be entered accordingly.